[No. 33315-1-I.   Division One.   February 21, 1995.]

PRECISION MOULDING & FRAME, INC., ET AL, *Appellants*, v. SIMPSON DOOR COMPANY, *Respondent*.

*Robert Carlson*, for appellants.
*Paul Meiklejohn*, for respondent.

AGID, J. — Precision Moulding & Frame, Inc. (Precision) appeals the trial court's order granting summary judgment to Simpson Door Company (Simpson) in its claim against Simpson for violation of Washington's Uniform Trade Secrets Act (UTSA), RCW 19.108, and for breach of contract.[1] We affirm.

## FACTS

Simpson manufactures doors for use in residential and commercial construction. One of Simpson's products is the Empress door, which has an oval-shaped glass insert. The glass insert is held in place by oval moldings on each side of the door. In early 1986, Robert Downing and his brother John Downing formed Precision, a woodworking company. Precision offered to supply oval moldings to Simpson for use in the Empress doors. In January 1987, Simpson issued a purchase order to Precision. Simpson continued purchasing moldings from Precision for more than 2 years. Simpson later began buying some of its moldings from another supplier, McKinzie Woodworking, and eventually began producing the moldings in house. The initial purchase of moldings from McKinzie and subsequent in-house production led to this suit.

The moldings consist of several wooden parts. In assembling the moldings, Precision used an automatic banding machine to hold the wooden parts of the moldings together while the adhesive used to join the parts dried. Precision found out about the use of the automatic banding machine in 1986 from Jon Forsgren. Forsgren was operating Alternatives in Wood (Alternatives), a woodworking business producing various types of furniture, including oval mirror frames. Robert Downing hired Forsgren as a consultant for assistance in developing the oval molding for the Empress

---

[1]We discuss Precision's breach of contract claim in the unpublished portion of the opinion.

door. Without receiving additional compensation, Forsgren told Downing that an automatic banding machine could be used to strap the pieces of the molding together while the adhesive dried. Forsgren also gave Downing the name of the salesperson from whom Alternatives had purchased the machine he was describing.

In his affidavit in support of Simpson's motion for summary judgment, Forsgren stated that Alternatives did not consider the use of the banding machine to be proprietary and that he had entered into no confidentiality agreement with Downing. He further stated that Alternatives would have shared the information with anyone who had sought its advice. He also stated that information about the process was readily available through Alternative's employee handbook, which referred to use of the banding machine without any confidentiality restrictions. Forsgren made a supplemental declaration on February 3, 1993, in which he stated that he asked for, and received, an assurance that Precision would not compete with his business in the manufacture of mirror frames and that he would not have cooperated with Precision or shown Downing any aspect of his business, including the banding machine, if he had not received the agreement not to compete. Forsgren restated, however, that he never asked Downing to keep the banding machine confidential. In his second supplemental declaration, dated February 4, 1993, he further explained that neither he nor anyone else at Alternatives had ever considered the use of the banding machine to be a trade secret, that they had taken no precautions to maintain secrecy regarding its use and that his request to Downing to enter into a confidentiality agreement had nothing to do with concerns about the confidentiality of the banding machine.

In his deposition, Robert Downing stated that he considered the use of the banding machine a trade secret and had entered into a confidentiality agreement with Forsgren when the latter informed him of the process. According to Downing, the terms of the agreement were that Precision would not go into the mirror business and Forsgren would

not go into the door molding business. Downing could not remember whether they had agreed not to tell anyone that the banding machine could be used for the process involved here. He stated that, on one occasion, a representative from Simpson visited Precision's woodworking shop and he informed the representative that Precision considered its assembly process proprietary and took measures to cover up machinery in the plant to prevent Simpson from learning its assembly process.

In 1987, Douglas Holt, a sales agent for Jeff Terrill Machinery, the company that sold automatic banding machines to both Precision and Simpson, solicited machinery purchases from Precision and arranged a visit to its plant. According to Downing, during that visit Holt observed that Precision was using an "Akebono" banding machine. Approximately a month after Holt's visit to Precision, Jeff Terrill Machinery provided Simpson with a quotation for the same banding machine as Precision was using.[2]

Precision sued Simpson, claiming that it had violated the UTSA by using the automatic banding machine in assembling oval moldings and that it had breached an agreement to purchase moldings exclusively from Precision. The trial court granted summary judgment in favor of Simpson, concluding that Precision had failed to establish that Simpson had misappropriated a legally protectable trade secret. The court further held that Precision's contract claim was barred by the Uniform Commercial Code (UCC), RCW 62A *et seq.*, and that the alleged contract was unenforceable in any event because it failed to include a price term.

### DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[2]Precision also refers to the declaration of Thomas Katica, an employee of MER Equipment. The declaration is dated March 15, 1993. The trial court granted summary judgment on February 19, 1993. Therefore, this document was not before the trial court when it made its decision, and we do not consider it on appeal.

party is entitled to a judgment as a matter of law." CR 56(c). In considering a motion for summary judgment, a court views all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 737, 844 P.2d 1006 (1993), *cert. denied*, 114 S. Ct. 697 (1994). The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. 120 Wn.2d at 737. An appellate court engages in the same inquiry as the trial court on review of a summary judgment. 120 Wn.2d at 737.

In order to establish a claim for misappropriation of a trade secret under the UTSA, the plaintiff must first prove that a legally protectable trade secret exists. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 738 P.2d 665 (1987). RCW 19.108.010(4) defines a trade secret as

information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Thus, in order to have a legally protectable interest in trade information, a party must establish (1) that the information derives independent economic value from not being generally known or readily ascertainable to others who can obtain economic value from knowledge of its use and (2) that reasonable efforts have been taken to maintain the secrecy of the information.

The trial court ruled that using an automatic banding machine to hold molding together as adhesive sets does not constitute a trade secret because information regarding the process was available in the public domain and because Precision had not taken reasonable steps to protect the information. Precision contends this was error because the evidence, viewed in the light most favorable to it, was sufficient from which a reasonable jury could have found that the process constituted a trade secret. It further contends that the court

improperly resolved issues of credibility in favor of Simpson in making its findings.

We agree with the trial court that Precision failed to raise a genuine issue of material fact as to whether others in the woodworking industry could readily ascertain the information by proper means. The information was included in Alternative's employee handbook. Furthermore, Forsgren would have shared the information with anyone. This, combined with the fact that the technology, albeit used for other applications, has been available for more than 20 years, leads inevitably to the conclusion that the information was readily available. Thus, the information does not "derive[ ] independent economic value . . . from not being . . . readily ascertainable by proper means by[ ] other persons who can obtain economic value from its disclosure or use". RCW 19.108.010(4).[3]

██ The only basis on which Precision could arguably possess a protectable interest in the process would be if its particular use of the process in the assembly of moldings for door inserts could be viewed as a trade secret.[4] The statute does not support this position, however. The UTSA does not define trade secrets as information about or a process used in a particular or discrete application. While a defendant does not need to go so far as to establish that the information is known to or readily ascertainable to the general public to defeat a trade secret claim, a plaintiff cannot establish that a trade secret exists if the information is generally known to or readily ascertainable by other persons who can

---

[3]Because we conclude that the information was readily ascertainable by proper means, we do not need to decide whether the technology was generally known. A plaintiff must establish both that the information is not readily ascertainable and that it is not generally known to satisfy RCW 19.108.010(4)(a).

[4]Precision also bases its trade secret argument on a distinction between manual and automatic banding machines. However, there is nothing in the record to support its contention that there is a functional difference between using one or the other or that the existence of automatic banding machines was not known or readily ascertainable to those familiar with the use of manual banding machines to hold wood while adhesive sets.

obtain economic value from its disclosure or use.[5] The UTSA contemplates that the existence of a trade secret be measured by the accessibility of the information within a given industry, *i.e.*, the "persons who can obtain economic value from its disclosure or use". UTSA § 1(4)(i). We conclude that the statute does not confine the relevant industry only to persons involved in a particular application of certain information or a particular process. Thus, the relevant industry in this case includes not only door molding manufacturers, but also the woodworking industry in general, because persons who can obtain economic value from the use of the process are found in both groups.

We also agree with the trial court that Precision failed to raise a genuine issue of material fact as to whether reasonable efforts were taken to maintain the secrecy of the process. Precision contends that the trial court improperly resolved issues of credibility in favor of Simpson. In reaching this conclusion, it relies primarily on Downing's statement that the banding machine was covered when a representative of Simpson paid a visit to Precision's plant in support of this argument. Notwithstanding Downing's statement, we find that the trial court did not need to resolve any credibility issues in concluding that the process was not the subject of reasonable efforts to maintain its secrecy. The fact that Holt could have acquired the information when he visited the plant is sufficient to establish that Precision did not take reasonable measures to maintain the secrecy of its use of the banding machine. Precision anticipated Holt's visit and could easily have covered the machine as Downing did when Simpson's representative visited the plant.

Furthermore, although Precision introduced evidence that it considered the process a trade secret, Forsgren, the person from whom Precision acquired the information, took

---

[5]*See* UTSA § 1 cmt., 14 ULA 439 (1990) (UTLA "does not require that information be generally known to the public for trade secret rights to be lost. If the principal persons who can obtain economic benefit from information are aware of it, there is no trade secret").

no steps to keep the process secret. Although Forsgren and Downing did enter into a noncompetition agreement, there is no support for Precision's contention that this agreement encompassed a requirement to maintain the secrecy of the banding process. It is difficult to see how Precision can claim a trade secret in a process which the person from whom it acquired the information was willing to share with anyone. We conclude that merely acquiring a trade process from a person who does not consider the process a trade secret and has taken no steps to protect its secrecy does not establish a protectable interest in the process. *See Machen, Inc. v. Aircraft Design, Inc.*, 65 Wn. App. 319, 329, 828 P.2d 73 (the "law of trade secrets does not protect information disclosed without establishing a basis for its confidentiality"), *review denied*, 120 Wn.2d 1007 (1992).

Precision further contends that the trial court incorrectly applied a requirement of absolute secrecy as opposed to relative secrecy in concluding that Precision had not taken reasonable steps to maintain the secrecy of the process. Although we agree with Precision that relative secrecy is the proper standard under the statute, *see Machen*, 65 Wn. App. at 327 (the "requirement for secrecy is not absolute"), there is no indication that the trial court even considered this issue. Furthermore, as our discussion above indicates, the degree of secrecy required under the statute is not material to the resolution of the issue here because, in our view, Precision cannot satisfy the secrecy requirement of the statute under either standard.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

GROSSE and KENNEDY, JJ., concur.