[No. 37893-7-I.   Division One.   October 13, 1997.]

ED NOWOGROSKI INSURANCE, INC., *Appellant*, v. MICHAEL RUCKER, ET AL., *Defendants*, DARWIN RIECK, ET AL., *Respondents*.

*Steven H. Winterbauer* of *Winterbauer & Associates*, for appellant.

*Charles E. Watts* of *Oseran, Hahn, Van Valin & Watts, P.S.*, for respondents.

Coleman, J. — Ed Nowogroski Insurance sued former employees for soliciting its clients with confidential information. The trial court ruled that the employees had misappropriated Nowogroski's trade secrets by retaining and using client lists and other documents. But it awarded

no damages for one individual's solicitation of clients with memorized information. Because there is no legal distinction between written and memorized information under the Uniform Trade Secrets Act (UTSA), we hold that the memorized information also constituted trade secrets and remand for a recalculation of damages.

Nowogroski sells and services personal and commercial insurance lines. Donald Rupp and his wife, Joan, built a lucrative business as Nowogroski's owners. Donald hired Darwin Rieck as an insurance promoter in 1982 and later sold Rieck a 5.14 percent shareholder's interest in Nowogroski. In 1986, Donald hired Jerry Kiser. Kiser joined Nowogroski "with the understanding that Darwin Rieck and I will be in line to succeed [Donald] with the ownership of the agency." But the details of this agreement were never worked out.

Donald died in 1988, but Nowogroski continued to flourish under Rieck and Kiser's management. In 1989, they hired Michael Rucker as an agent. Rucker wrote a memo of understanding stating that if he terminated his employment, he could purchase his accounts for 1.5 times their annual commissions.

As producers and servicers of Nowogroski's insurance accounts, Rieck, Kiser, and Rucker developed strong personal relationships with their clients. The three employees had access to Nowogroski's customer lists and other confidential information. Rieck never signed a noncompete agreement. And while Kiser recognized that he should have some obligation not to compete with Nowogroski after his employment, he never negotiated the details with Donald. Rucker, by contrast, signed a two-year noncompete agreement, acknowledging that Nowogroski's customer lists and related information were trade secrets.

In 1991, Joan Rupp brought her daughter, Michelle, into Nowogroski's management. This caused tension in the agency. Rieck felt that Michelle was too inexperienced

and lacked management skills. He believed that Joan wanted to oust him from management. Joan did not give discretionary bonuses to Rieck or Kiser that year. In the spring of 1992, Joan asked Rieck and Kiser to purchase their commercial accounts and leave the company. The two offered to purchase all their accounts at 0.4 times the commissions. Joan rejected the offer and made no counter-offer.

When attempts to restore peace at the agency failed, Rieck and Kiser began exploring other employment opportunities. On August 18, 1993, they informed Joan and Michelle that they anticipated leaving Nowogroski at the end of the month. They offered to purchase their accounts at 0.6 times the commissions. On August 25, 1993, after failing to attend scheduled negotiation meetings, Joan rejected this offer and accepted Rieck's and Kiser's resignations.

Rieck, Kiser, and Rucker went to work for Potter, Leonard and Cahan, Inc. (PLC). Rieck sent letters to his clients stating:

> I am pleased to announce that two associates and myself from Nowogroski . . . have merged with Potter, Leonard and Cahan Insurance Brokers of Seattle.
>
> . . . .
>
> To transfer your insurance account to our new firm, it is necessary to have you complete and sign the enclosed appointment letter(s).

Nowogroski demanded that Rieck and Kiser stop sending these letters because they suggested that it had merged with PLC. It also asked them to return confidential client information. Rieck and Kiser deleted the word "merged" from their letters, but they did not return any client lists or summaries. Instead, they claimed to have destroyed them.

After numerous Nowogroski clients purchased insurance with PLC, Nowogroski sued Rieck, Kiser, Rucker,

and PLC. Nowogroski alleged that its former employees had used confidential documents to obtain an unfair advantage in soliciting its business. It sought damages and injunctive relief for wrongful disclosure, use, and retention of confidential information, breach of contract and fiduciary duties, and trade secret misappropriation under the UTSA.

The trial court dismissed Nowogroski's tort claims on partial summary judgment, ruling that they were displaced by the UTSA. After a bench trial, the court found Rieck, Kiser, Rucker, and PLC liable for misappropriating Nowogroski's trade secrets. The court also found that Kiser had entered a noncompete agreement for a reasonable term. As for Rucker, the court found that he had breached his noncompete agreement and his contract to purchase his accounts for 1.5 times their commissions. Rucker is not a party to this appeal. PLC was held liable for aiding and abetting the wrongful client solicitations.

The court ruled that Nowogroski's client information constituted trade secrets only to the extent that it was in writing:

> I find that insurance summaries, customer lists and other documents containing customer names, expiration dates, coverage information and related information produced by the agency or by the insurance company and kept by the agency, as opposed to information retained in their heads, are trade secrets.

Accepting Rieck's testimony that he knew his 50 largest clients by memory, the court awarded no damages for his solicitation of those accounts.

In awarding damages, the court rejected Nowogroski's expert evaluation of its lost business. It found that this $770,000 appraisal was based on the unreasonable premise that the policies would be renewed even though the promoters had departed:

> A key part of such an expectation is obtaining the cooperation of the producer in communicating with the customers in

a way which creates a smooth transition. If the producer, as here, is not likely to cooperate in attempting to get the customer to renew, plaintiff's expert's approach is flawed. If a buyer has the prospect of competing with the producers or others for renewals, if the agency doesn't have the personal contacts with the customers that create loyalty, and therefore renewals, the market value of the book is seriously diminished.

A defense expert had testified that Nowogroski's lost accounts were worth nothing but conceded that a buyer might be persuaded to pay $100,000. The court concluded:

> Given the fact that the producers would be competing, and a willing buyer could not be found, I determine the value to plaintiff of what was lost as calculated by using a multiple of 0.5 against the commissions.

Excluding the commissions for Rieck's top 50 clients from its calculations, the court awarded damages at 0.5 times Rieck's and Kiser's commissions.

The court denied Nowogroski's unjust enrichment claim, ruling that Nowogroski had unclean hands for cutting off the defendants' reasonable expectation of ownership interests. It also denied Joan's claims for emotional distress, exemplary damages, and attorney fees.

We first decide whether the UTSA allows an individual to solicit a former employer's clients by using confidential information that the employee has committed to memory. Rieck and PLC do not dispute that the documents containing Nowogroski's client information are trade secrets. But they claim that the UTSA displaces the common-law rule that a person may not use memorized confidential information to solicit his or her former employer's business. Because nothing in the UTSA supports the conclusion that memorized information cannot constitute a trade secret, the trial court erred by awarding no damages for Rieck's solicitation of his 50 largest clients.

■ To establish a trade secret misappropriation claim, a plaintiff must first show that a legally protected trade

secret exists. *Precision Moulding & Frame, Inc. v. Simpson Door Co.*, 77 Wn. App. 20, 25, 888 P.2d 1239 (1995). The UTSA provides:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4). We review matters of statutory interpretation de novo.

The parties agree that under common law, a person could not use confidential knowledge of his or her former employer's customers to actively solicit their business. *See John Davis & Co. v. Miller*, 104 Wash. 444, 449, 177 P. 323 (1918); *J.L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 64, 113 P.2d 845 (1941). The fact that the former employee memorized the information, rather than reducing it to writing, made no difference. *Davis*, 104 Wash. at 449; *Cooper*, 9 Wn.2d at 55. The dispute here is limited to whether the UTSA displaces this common-law rule. *See* RCW 19.108.900(1) (the UTSA "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret.").

██ We hold that the common-law rule prohibiting the solicitation of a former employer's customers with memorized confidential information remains intact under the UTSA. The UTSA defines trade secrets as "information[.]" RCW 19.108.010(4). Its examples of "method[s]" and "technique[s]" indicate that the Legislature did not intend to limit trade secrets to written or tangibly fixed data. Rather, the test is whether the information derives value from being subject to reasonable secrecy efforts and not generally known or readily ascertainable. RCW 19.108.010(4)(a), (b).

The UTSA focuses on the nature of the information, not the form in which it exists. Thus, the distinction between written and memorized information is without legal significance. Rieck and PLC do not dispute that Nowogroski's customer lists and written information constitute trade secrets. Because the lower court excluded damages for Rieck's solicitation of his fifty largest accounts only because he memorized the client information, we reverse and remand for entry of an increased damage award.

We next address whether the UTSA displaces Nowogroski's tort claims for misuse of confidential information and intentional interference. Nowogroski argues that the UTSA displaces only torts that are dependent on the existence of trade secrets. Rieck and PLC argue that the UTSA provides the exclusive remedy for the acts giving rise to Nowogroski's claims. As discussed above, the use of Nowogroski's client information, written and memorized, constituted trade secret misappropriation. Since Nowogroski's tort claims are all based upon the same acts, we affirm the lower court's ruling that the UTSA displaces them.

While the UTSA does not affect "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret[,]" it specifically displaces conflicting tort laws pertaining to trade secret misappropriation. RCW 19.108.900. Thus, Nowogroski may not rely on acts that constitute trade secret misappropriation to support other causes of action. *Accord, Vigoro Indus., Inc. v. Cleveland Chem. Co.*, 866 F. Supp. 1150, 1161 (E.D. Ark. 1994), *reversed in part on other grounds*, 82 F.3d 785 (8th Cir. 1996). But that is exactly what it has attempted to do. Nowogroski's tort claims are all based on the defendants' retention and use of its client information. Because we have decided that these acts constituted trade secret misappropriation, we affirm the lower court's ruling that liability and damages are governed exclusively by the UTSA. This precludes Joan's claim for emotional distress damages.

We now turn to the validity of the lower court's damage calculation method. The court awarded Nowogroski 0.5 times the commissions on the accounts that Rieck and Kiser had solicited. Nowogroski claims that this method failed to compensate its actual losses. Rieck and PLC argue that the award should not be disturbed because it lies within the range of the evidence presented. We uphold the trial court's method.

■ The UTSA entitles a party to recover "damages for the actual loss caused by misappropriation." RCW 19-.108.030(1). Our review of damage calculations is limited to whether they are supported by substantial evidence. *Price v. Kitsap Transit*, 125 Wn.2d 456, 465, 886 P.2d 556 (1994). A damage award must thus fall within the range of relevant evidence. *Ferrell v. Cronrath*, 67 Wn.2d 642, 645, 409 P.2d 472 (1965).

■ A defense expert opined that Rieck's and Kiser's accounts would have no value, given that the promoters left the agency as they were entitled to do. While Rucker had agreed to purchase his accounts for 1.5 times the commissions, Rieck and Kiser had no similar contractual obligation. Substantial testimony shows that the promoter's personal relationship with his or her clients is a major factor in valuing insurance accounts. We uphold the trial court's finding that an account's market value would diminish if the promoter left the agency, since clients would likely follow the promoter rather than stay with the agency. Rieck testified that his customers would have left Nowogroski even if he had not solicited their business. While this may have been irrelevant to the issue of liability, the trial court was entitled to find that it affected the value of Nowogroski's lost accounts. Given the testimony that Rieck's and Kiser's Nowogroski accounts would have no market value at all, we cannot say that the trial court abused its discretion by multiplying the commissions by 0.5 to arrive at a damages award.

■ Nowogroski next argues that it was entitled to unjust enrichment damages. Besides compensatory dam-

ages, the UTSA provides that "[a] complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." RCW 19.108.030(1). We disagree with the trial court's finding that Nowogroski acted with unclean hands. But we conclude that Nowogroski was not entitled to recover for unjust enrichment because there was no evidentiary basis upon which the trial court could have determined any damages apart from Nowogroski's actual losses.

The only evidence of damages in the record concerns the value of the accounts that left the agency. Nowogroski's expert estimated the value of the lost business, but his calculations admittedly failed to account for the fact that the defendants had left Nowogroski and were free to compete with its business. While unjust enrichment may be an appropriate remedy in certain cases, Nowogroski produced no evidence to rebut the defendants' claim that most of the clients would have followed their promoters even if they had not been solicited with trade secrets. Thus, there is no basis in the record to determine an unjust enrichment award in addition to the compensatory damage award. Because Nowogroski's only evidence as to damages involved the value of its lost business and the trial court's damage award was within the range of the evidence, we affirm the trial court's refusal to make a separate award for unjust enrichment.

■■ We also affirm the trial court's decision not to award Nowogroski exemplary damages and attorney fees. The UTSA gives the court discretion to award exemplary damages and attorney fees in cases of willful and malicious misappropriation. RCW 19.108.030(2), .040. Thus, we will reverse only if the trial court's decision was clearly erroneous. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 61-62, 738 P.2d 665 (1987). Nowogroski has not shown that it was clearly erroneous to deny exemplary damages or attorney fees.

■ Kiser and PLC cross-appeal, arguing that the trial

court erred by finding that Kiser had a contractual duty not to compete with Nowogroski after he left its employment. Contrary to Nowogroski's assertion, the cross-appeal was timely filed within 14 days of its appeal. Once the original appeal is filed and served, "any other party who wants relief from the decision" may file a notice of appeal within 14 days. RAP 5.2(f)(1). While Kiser and PLC challenge a ruling other than those involved in Nowogroski's appeal, it is part of the same "decision." We thus proceed to the merits of Kiser's and PLC's cross-appeal.

The trial court found that Kiser had agreed not to compete with Nowogroski after he left the agency. Kiser's employment acceptance letter to Donald provided:

> Accepting this [employment] opportunity means that my employer will be the agency known as Nowogroski Insurance Associates. That being, my allegiance will solely be to this employment. If that relationship should change, certain obligations to Nowogroski Insurance Associates should be recognized for their contributions to my employment. Basically, those obligations should be those of non-compete on that business of Nowogroski Insurance Associates that I was associated with while in that employment. This non-compete should be a negotiable situation based on a certain time limit, and should have other terms where certain business may be negotiated with other options agreed upon by the interested parties.
>
> Don, I hope this is acceptable to my employment. I feel that this is a well-rounded, quick synopsis of what we have verbally agreed upon . . . . and that nothing is concrete but will be worked out for the best.

While this letter shows an intent to enter a noncompete agreement, its essential terms were never decided. Thus, we disagree with the trial court's conclusion that a contract was formed.

Our holding, however, is of no practical significance because Kiser is liable for Nowogroski's losses regardless of any contractual obligation. The trial court ruled that "Kiser is obligated to pay for the business he solicited

away from plaintiff based upon this contract *and* upon his violation of the Trade Secrets Act." (Emphasis added.) Thus, even though we decide that Kiser had no contractual duty, he is still liable under the UTSA for misappropriating trade secrets. As is true for Rieck, the existence of a noncompete agreement is irrelevant to Kiser's liability in this case.

We finally note that Nowogroski's reply to the cross-appeal exceeds RAP 10.4(b)'s 25-page limit by 8 pages. We deny Nowogroski's belated request for leave to file its over-length brief and strike the last eight pages. In any event, the stricken portion repeats arguments that Nowogroski advanced in its opening brief

We affirm in part but reverse the ruling that Rieck's memorized client information was not a trade secret and remand for a determination of damages.

GROSSE and ELLINGTON, JJ., concur.

Review granted at 134 Wn.2d 1024 (1998).