GOINS v. SNEED.

5-1596                                                317 S. W. 2d 269

Opinion delivered October 27, 1958.

[Rehearing denied December 1, 1958]

*Brockman & Brockman,* for appellant.

*Boyce R. Love & Jay W. Dickey,* for appellee.

ED. F. McFADDIN, Associate Justice. This appeal presents questions concerning (a) limitations and (b) methods of accounting.

For many years E. E. Goins rented land to John Sneed and advanced him money and supplies for cultivation of the land and harvesting of the crops. In addition to the landlord's lien for the advances, Mr. Goins also had two mortgages as security. One[1] was executed on November 27, 1950, and in addition to securing a specified note, also provided:

"This mortgage shall also be security for any other indebtedness of whatsoever kind that the grantee or holders or owners of this mortgage may hold against grantors by reason of future advances made hereunder, by purchase or otherwise, to the time of the satisfaction of this mortgage."

---

[1] It described the following property: "The West Half (W½) of the Northeast Quarter (NE¼) of the Northwest Quarter (NW¼) of Section Sixteen (16), Township Eight (8) South, Range Seven (7) West, containing 20 acres, more or less.

"ALSO, 1 Farmall Tractor together with all attachments; 1 Chevrolet Pickup Truck, ½ Ton, 1948 Model, Motor No. AFCA-88424; 1 John Deere Wagon; all Farming Implements; one Grey Mule named Hank; one Dark Bay Horse, named Spotlight; all crops raised or caused to be raised by grantor."

The other mortgage[2] was dated July 6, 1953, and secured a described note and was also for the payment of ". . . goods, merchandise, or supplies, live stock, advances or acceptances furnished, and which may be furnished by second party or parties to first party or parties, the exact amount to be determined by the books of the second party or parties and due and payable on the 1st day of November, 1953." There does not appear to have been any settlement of accounts between John Sneed and E. E. Goins after the 1950 note.

On August 17, 1953 John Sneed, a widower, died intestate, survived by several sons and daughters. Three of the sons (L. G. Sneed, Nelson Sneed, and Garland Sneed) and one daughter (Rebecca Sneed Hamilton), all of full age, agreed to complete the 1953 crop and apply the proceeds on the John Sneed indebtedness to Mr. Goins. This was all done; and according to Mr. Goins' accounts, there was still due him, after all credits, a substantial balance secured by the John Sneed mortgages.[3]

In 1954, some or all of the said four adult Sneed children continued to use the John Sneed farming equipment (mortgaged to Mr. Goins), and rented and cultivated the same lands. Mr. Goins continued to advance money and supplies to the said Sneed children, apparently relying on his landlord's lien and the John Sneed

[2] It described the following personal property:
"One Model G John Deere Farm Tractor Serial No. 35632
One Set 4-row John Deere Cultivators
One Set 3-row Busters
1 cream colored Milk Cow wt. 300 lbs.—6 years old
1 Red Milk Cow wt. 300 lbs.—5 years old
1 Red White Face Bull—5 weeks old
1 Black Bull—2 years old
And all increase from cows
And also all of our crops . . . raised during the year 1953."
[3] Mr. Goins' figures show that at the time of the death of John Sneed the total amount owed by him to Mr. Goins was $6,626.03; that Mr. Goins advanced $1,462.73 to complete the 1953 crop; that the total proceeds from the 1953 crop were $3,408.64; that when the $1,462.73 was first taken out of the proceeds there was left a balance of $1,945.91 to apply on the John Sneed indebtedness; that this reduced the balance of the indebtedness due by John Sneed and secured by the mortgages to $4,680.12; and that the amounts paid by the Sneed children from 1954 and 1955 crops reduced the balance to $2,455.99. The correctness of Mr. Goins' figures was disputed in some instances, but on only a few items.

mortgages. The tacit understanding seems to have been that if the said Sneed children were able to satisfy the mortgage indebtedness of John Sneed to Mr. Goins, then the John Sneed heirs would receive the mortgaged property. There was never any administration on the estate of John Sneed, and no other creditors are mentioned in the record before us.

The 1954 arrangement between the said Sneed children and Mr. Goins was continued by mutual consent for the crop year of 1955. Mr. Goins refused to continue the arrangement for 1956; and on May 28, 1956 filed the present suit against all of the Sneed heirs for judgment for $2,455.99, together with interest from November 22, 1955; and for foreclosure of the two mortgages executed by John Sneed to Mr. Goins. The defendants filed general denial, denied portions of the claimed indebtedness, and also pleaded limitation against each and both of the mortgages executed by John Sneed to Mr. Goins. After an extended trial, the learned Chancellor delivered a written opinion, in which he held:

(1) That all indebtedness incurred by John Sneed to Mr. Goins prior to May 27, 1953 was barred by the 3-year statute of limitation, since this suit was not filed until May 27, 1956; but that all advances made by Mr. Goins to John Sneed after May 27, 1953 up to the time of his death were valid and secured by the mortgages.

(2) That the dealings for 1954 and 1955 between Mr. Goins and the Sneed children were entirely separate from the John Sneed matters and that the Sneed children had overpaid their account by the sum of $2,733.75; but that they had not asked for judgment, so none was rendered.

(3) That during the course of the litigation Mr. Goins had obtained possession of some of the mortgaged chattels by receivership proceedings; and that this cancelled any claim that Mr. Goins had under the John Sneed mortgages.

(4) That Mr. Goins' accounts were in error in a few instances, which we will discuss in Topic III, *infra*.

From that decree both sides have appealed: Mr. Goins claiming he is entitled to judgment for the amount prayed and for the foreclosure of the mortgages; and the Sneed children claiming that they are entitled to judgment against Mr. Goins for overpayment. The questions presented are discussed in a number of points; but we group and dispose of them in the following topic headings:

I. *Limitation against Goins' Right to Foreclose The John Sneed Mortgages.* The Trial Court was of the opinion: (a) that the 3-year statute of limitation (§ 37-206 Ark. Stats. on open accounts) applied to the indebtedness due by John Sneed to Mr. Goins; (b) that the statute continued to run after John Sneed's death, so; (c) that all items furnished more than three years before the filing of the suit (May 27, 1956) were barred by the statute of limitation. Without deciding whether the 3-year statute of limitation or the 5-year statute of limitation would be applicable (because of the provisions in the notes and mortgages sued on), we nevertheless conclude that no statute of limitation had run against Mr. Goins when he instituted his suit to foreclose the mortgages on May 27, 1956.

When John Sneed died on August 17, 1953, none of his indebtedness to Mr. Goins was barred by any statute of limitation: he had executed a mortgage on the 27th of November, 1950 and none of his indebtedness was due until the fall of 1951; and John Sneed had also executed a mortgage on July 6, 1953. In *Bowdre & Co.* v. *Pitts,* 94 Ark. 613, 128 S. W. 57, we held that when a debtor died before the right of action against him was barred by limitation, the "general statute of limitation then ceased to run against the debt and was succeeded by the 2-year statute of non-claims,[4] which did not begin to run before administration on the estate of the decedent. . . The action to foreclose the mortgage was, therefore, not barred and the Chancellor erred in dismissing the complaint . . ." That holding was

[4] The non-claim statute has now been shortened to six months (see § 62-2602 Ark. Stats.).

reiterated in *Montgomery* v. *Gant*, 100 Ark. 629, 140 S. W. 260.[5]

Applying these holdings to the case at bar, it follows that none of the indebtedness of John Sneed to Mr. Goins was barred by the statute of limitation because (a) no limitation had run before John Sneed's death; (b) there was nothing to show any holding adverse to Goins' mortgages; and (c) there was no administration on the estate of John Sneed. So, Mr. Goins was entitled to foreclose his mortgages for whatever amount John Sneed owed him at the time of his death, less whatever amounts the Sneed children had paid on the said indebtedness. Mr. Goins claimed this balance to be $2,455.99. The fact that Mr. Goins had taken possession of some of the mortgaged chattels under a receivership did not operate in any way to prevent him from foreclosing his mortgages. The correct amount for which he was entitled to foreclose will be discussed in Topic *III, infra.*

II. *The Sneed Cross Appeal.* Appellees on their cross appeal say that they are entitled to judgment for $967.95 not allowed by the Trial Court;[6] but we find they are not entitled to any judgment because they took charge of the mortgaged chattels and used them for the purpose of assisting in liquidating the indebtedness of John Sneed to Mr. Goins, and they voluntarily allowed all such proceeds of the crops to be applied on the John Sneed indebtedness. As aforesaid, they were trying to free the land and the chattels of the mortgages when they voluntarily allowed the payments to be so applied. They cannot recover for amounts voluntarily paid. *Northcross* v. *Miller,* 184 Ark. 463, 43 S. W. 2d 734; *Ritchie* v. *Bluff City Lbr. Co.,* 86 Ark. 175, 110 S. W. 591; *Larrimer* v. *Murphy,* 72 Ark. 552, 82 S. W. 168.

III. *The Correct Amount Due Mr. Goins.* Mr. Goins had given the defendants memoranda at various

---

[5] The case is not reported in full in the Arkansas Reports.

[6] The Chancellor's opinion said, ". . . a surplus credit due L. G. Sneed of $2,733.75"; but, by reason of the appellees' claim of yearly credits, they sought only $967.95 on the cross appeal.

undated and unspecified times as to amounts due, but it seems that each one of these memoranda was for an amount greater than the amount now claimed by Mr. Goins. There is, however, the matter of correct credits to be allowed for an oat crop, and the correct amount to be allowed for some corn. The Chancellor found that Mr. Goins had not allowed the correct amount of credits for these items. We conclude that Mr. Goins had not allowed full credit for some items, so the amount claimed by Mr. Goins on his mortgages is reduced by the sum of $300.00. Mr. Goins was entitled to no personal judgment against any of the defendants.

## CONCLUSION

The decree is reversed and the cause is remanded, with directions to enter a decree in favor of Mr. Goins for the sum of $2,155.99, with interest at 10 per cent from November 22, 1955 until paid; for foreclosure of the two mortgages executed to him by John Sneed; and for all costs.