Jeffrey L. SLATON *v.* Teresa A. SLATON

98-1158                                         983 S.W.2d 951

Supreme Court of Arkansas
Opinion delivered January 28, 1999
[Petition for rehearing denied March 4, 1999.]

*Davis & Watson, P.A.,* by: *Charles E. Davis,* for appellant.

*Hardin, Jesson & Terry,* by: *J. Rodney Mills;* and *Annie Powell,* for appellee.

A NNABELLE CLINTON IMBER, Justice. This is the second appeal arising from the divorce of Jeffrey and Teresa Slaton. In this appeal, the appellant, Jeffrey Slaton, contends that the trial court erred in numerous respects when it determined the amount that the appellee, Teresa Slaton, was in arrears for child-support payments. We reverse and remand.

Jeffrey and Teresa Slaton were divorced on September 26, 1991. The court awarded Jeffrey custody of the two children born of the marriage, ordered Teresa to pay $300-a-month child support, and gave Teresa visitation rights. On the same day, Teresa filed a "Motion for Reconsideration" in which she claimed that the divorce decree was "contrary to the preponderance of the evidence." The numerous motions and opinions that were entered thereafter were fully discussed in our first opinion in this matter. *See Slaton v. Slaton,* 330 Ark. 287, 956 S.W.2d 150 (1997) (*Slaton I*). Suffice it to say that on March 5, 1992, the trial court entered an order granting Teresa and Jeffrey joint custody of their two children and dispensing with Teresa's obligation to pay child support. Jeffrey became the primary custodial parent, and Teresa was given visitation rights.

In October of 1993, Teresa filed a motion for sole custody of the children due to changed circumstances. On March 9, 1994, the trial court denied her request for custody, and made the following rulings:

3. That on February 24, 1992[1], an Order was entered by this Court setting forth specifically under paragraph twelve, "(That neither party shall harass or make derogatory remarks concerning the other party in the presence of the minor children, nor shall either party harass the other party at all in any form or fashion.)".

4. That in the Order of February 24, 1992, paragraph thirteen was specifically set forth, stating that, "(Should either party cause a disruption . . . of the relationship between the children and the other party, this Court will consider a change of custody. . .)".

5. That the Plaintiff is to refrain from any language in front of the children designed to violate said February 24, 1992 Order, or influence or harass the children in any manner.

\* \* \*

8. All prior orders entered herein, not in conflict with the within, are still in full force and effect.

On August 7, 1995, Teresa filed another motion for sole custody of her two minor children. On December 26, 1995, the court gave Teresa sole custody of the children and granted Jeffrey visitation rights. The court subsequently ordered Jeffrey to pay $80 a week in child support beginning on December 8, 1995.

Sometime thereafter, Jeffrey appealed the March 5, 1992 order that granted the parents joint custody of the children and dissolved Teresa's obligation to pay child support. On October 16, 1997, we handed down our opinion in *Slaton I,* where we held, among other things, that:

> For these reasons, we find that the trial court did not have jurisdiction to enter the March 5, 1992 order modifying custody and child support. We reverse and remand for the trial court to determine the amount that Teresa owes in past-due child-support payments. This determination should take into account how

---

[1] In its March 20, 1998 order, the trial court explained that in the March 9, 1994 order "where the date of February 24, 1992, is used, it should be kept in mind that was the date of the hearing with the order growing out [sic] that hearing being entered on March 5, 1992, the significant date referred to by the Supreme Court in its last paragraph quoted herein above."

long the September 26, 1991 child-support order remained in effect, in view of various orders entered subsequent to March 5, 1992, that may or may not have incorporated by reference the terms of the March 5, 1992 order.

*Slaton I, supra.*

Pursuant to our opinion, the trial court held a second hearing to determine if any subsequent orders incorporated by reference the terms of the void March 5, 1992 order. On April 20, 1998, the trial court found that the March 9, 1994 order denying Teresa's request for a change in custody incorporated by reference the terms of the March 5, 1992 order that gave the parties joint custody of the children and extinguished Teresa's obligation to pay child support. Specifically, the court said, "Even though several orders have been entered since the March 5, 1992 order that indirectly have reference to that order, one order in particular, not only incorporates by reference the terms of the March 5, 1992 order, but quotes directly from that order in several particulars." The court then quoted paragraphs three, four, five, and eight of the March 9, 1994 order. Accordingly, the court ruled that Teresa was in arrears from September 26, 1991, the date of the divorce decree, until March 5, 1992, the date of the void order granting the parties joint custody and dispensing with Teresa's obligation to pay child support. The trial court subsequently entered a judgment against Teresa in the amount of $3,521.22 for child-support arrearages, interest, attorney's fees, and costs. The court allowed Teresa's judgment to be offset by $2000, which is the amount the court determined Jeffrey owed in child-support arrears from November 14, 1997 to May 1, 1998. From this order, Jeffrey filed a timely notice of appeal.

## I. Incorporation by Reference

In our first opinion in this matter, we said that the trial court should "take into account how long the September 26, 1991 order remained in effect, in view of various orders entered subsequent to March 5, 1992, that may or may not have incorporated by reference the terms of the March 5, 1992 order." *Slaton I, supra.* Although an order rendered in the absence of jurisdiction is void *ab initio* and thus cannot be incorporated by reference into a

subsequent order, *see Young v. Smith*, 331 Ark. 525, 964 S.W.2d 784 (1998); *Office of Child Support Enforcement v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997); *Barnhart v. City of Fayetteville*, 321 Ark. 197, 900 S.W.2d 539 (1995), our instruction to the trial court in *Slaton I* became the law of the case, and the trial court could not have varied it or judicially examined it for any purpose other than carrying it into execution. *See Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979).

■ Hence, the only question before us now is whether the trial court erred when it determined, pursuant to our holding in *Slaton I*, that the March 9, 1994 order incorporated by reference the child-custody and support rulings contained in the March 5, 1992 order. Chancery cases are reviewed *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *RAD-Razorback Ltd. Partnership v. B. G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

■ We have not previously established criteria for determining when an order incorporates by reference the terms of another order or judgment. However, we have held in numerous probate cases that a writing is incorporated by reference into a will if the intention to incorporate by reference is clear from the language of the document, and the writing to be incorporated is sufficiently described and identified. *See Gifford v. Estate of Gifford*, 305 Ark. 46, 805 S.W.2d 71 (1991). Likewise, we said in *Land v. Arkansas Dep't of Health*, 282 Ark. 191, 667 S.W.2d 651 (1984), that a "rule or regulation, like a statute, is not considered as a reference regulation unless the unequivocal and inflexible import of the terms of the statute manifest the intent that it be considered as such."

■ The March 9, 1994 order does not meet this criteria. Although the March 5, 1992 order is specifically mentioned in paragraphs three, four, and five of the March 9, 1994 order, those paragraphs have nothing to do with child support or custody. The eighth paragraph merely declared that "[a]ll prior orders entered

herein, not in conflict with the within, are still in full force and effect." We conclude that such boilerplate language does not specifically incorporate the terms of the March 5, 1992 order. For these reasons, we hold that the trial court's conclusion that the March 9, 1994 order incorporated the child-support and custody terms of the March 5, 1992 order was clearly erroneous. Accordingly, we reverse the trial court's order and hold that Teresa is in arrears for child-support payments that accrued between September 26, 1991 and December 8, 1995.

## II. Estoppel

Next, Jeffrey contends that the trial court erred in applying estoppel after we rejected a similar argument made by Teresa in *Slaton I*. In its April 20, 1998 order, the trial court commented on Jeffrey's failure to raise the issue of subject-matter jurisdiction in a more timely manner. The trial court's statements, however, were not rulings, but instead were statements likely made for the joint purposes of expressing displeasure with our opinion in *Slaton I* and Jeffrey's actions. At any rate, the statements cannot be construed as rulings in light of the court's later proclamation that there was no need to "do violence to the rule of law involving Jurisdiction." Hence, we conclude that the trial court based its determination of arrearages on incorporation by reference and not upon equitable principles.

Moreover, the parties were precluded from rearguing the issue of estoppel by the law-of-the-case doctrine. As we have explained numerous times in the past, the law-of-the-case doctrine provides that on second appeal the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Barnhart, supra,*; *Vandiver v. Banks*, 331 Ark. 386, 962 S.W.2d 349 (1998). For example, in *Vandiver, supra*, we would not allow the appellant to raise the issues of collateral estoppel and res judicata because the matters were resolved in the first appeal. *Vandiver, supra*. In reply, the appellant contended that the law-of-the-case doctrine did not apply because she nonsuited and refilled the case upon remand. *Id*. We rejected this argument because "any plaintiff losing an

appeal could avoid the appellate court's mandate in a case merely by voluntarily dismissing the suit upon remand." *Id.*

In *Slaton* I, we rejected the equitable argument that Jeffrey was estopped from challenging the validity of the March 5, 1992 order because he failed to raise the argument sooner, and the parties relied on the order for several years. *Slaton I, supra.* Specifically, we held not only that Teresa failed to assert the affirmative defense of estoppel in her answer to Jeffrey's motion to declare the order void and set arrearage, but we also held that there was nothing in the record to suggest that estoppel became an issue by either express or implied consent of the parties. *Id.* Hence, our decision in *Slaton I* is the law of the case with regard to the issue of estoppel. Similar to *Vandiver,* Teresa tried to resurrect her equitable arguments by raising them in a "Motion for Reconsideration" that was filed on February 20, 1998. However, as in *Vandiver,* a party cannot resurrect or reassert arguments that were dispensed with the first time on appeal. Accordingly, we find no merit to Jeffrey's second point on appeal.

### III. Ark. Code Ann. §§ 9-12-314 and 9-14-234

Next, Jeffrey contends that the trial court's ruling that the March 9, 1994 order incorporated by reference the provision of the March 5, 1992 order was contrary to the plain language of Ark. Code Ann. §§ 9-12-314 and 9-14-234. We, however, do not need to address this argument in light of our holding in section I of this opinion.

### IV. Credit for Previously Paid Support

Next, Jeffrey contends on appeal that he is entitled to a credit for the child-support payments he paid to Teresa from July 13, 1990 until October 27, 1991. On July 13, 1990, the trial court entered a temporary order giving Teresa custody of the children and ordering Jeffrey to pay $80 a week in child support. On September 26, 1991, the trial court entered a divorce decree giving Jeffrey custody of the children and requiring Teresa to pay $300 a month child support. The final divorce decree superceded the temporary order. *Smith v. Smith,* 236 Ark. 141, 365 S.W.2d

247 (1963); *Lewis v. Lewis*, 222 Ark. 743, 262 S.W.2d 456 (1953). When the court stayed the divorce decree on September 30, 1991, the superseded temporary order was not revived. Accordingly, the trial court was correct when it held that Jeffrey was under no obligation to pay child support to Teresa from September 26, 1991 until December 9, 1991. Hence, any payments that Jeffrey made during this time were voluntary payments that cannot be recovered. *See Vandiver, supra; Goins v. Sneed*, 229 Ark. 550, 317 S.W.2d 269 (1958).

Furthermore, we note that any arguments about payments that were made or should have been made prior to the March 1992 order were matters that could have and should have been raised in the first appeal of this case. Hence, as mentioned previously, these matters are barred from reconsideration under the law-of-the-case doctrine. *Vandiver, supra.* Accordingly, we affirm the trial court's ruling that Jeffrey is not entitled to a credit for child-support payments that he made from September 26, 1991 until October 27, 1991.

## V. *Effect of the Stay*

Finally, the trial court held that Teresa was in arrears from September 26, 1991, until March 5, 1992. On appeal, Teresa contends that she was not required to pay child support from September 30, 1991, the day the court stayed the divorce decree, until December 26, 1995, the day the court granted Teresa custody and ordered Jeffrey to pay child support. Teresa argues that on September 30, 1991, the trial court indefinitely stayed the September 26, 1991 order requiring her to pay child support, and that the stay has never been formally lifted.

In this argument Teresa is really asking us to reverse, in part, the trial court's ruling that she owed child support from September 26, 1991, until March 5, 1992. In *Arkansas Dep't of Fin. & Admin. v. Pharmacy Assocs., Inc.*, 333 Ark. 451, 970 S.W.2d 217 (1998), we explained that a "cross-appeal is an appeal by an appellee who seeks something more than was received in the trial court." It is well settled that we will not consider an appellee's request for affirmative relief when the appellee has failed to file a

notice of cross-appeal. *Arkansas Dep't of Fin. & Admin, supra; Edwards v. Neuse*, 312 Ark. 302, 849 S.W.2d 479 (1993). Because Teresa failed to file a notice of cross-appeal, we refuse to address this issue.

For these reasons, we reverse the trial court's order and hold that Teresa is in arrears for child-support payments that accrued between September 26, 1991 and December 8, 1995, and we remand for a hearing and determination that is consistent with this opinion.

Reversed and remanded.