Shonda BROWN, Shenia Biggs, Gledia Thomas,
Katrena Freeman, and Unique Design Wholesale, Inc.
*v.* RUALLAM ENTERPRISES, INC.
d/b/a Lam Container

CA 00-934                                    44 S.W.3d 740

Court of Appeals of Arkansas
Division II
Opinion delivered April 25, 2001

*Orr, Scholtens, Willhite & Averitt, PLC,* by: *Kevin J. Orr, Jay Scholtens,* and *Chris A. Averitt,* for appellants.

*Clifford M. Cole,* for appellee.

JOHN B. ROBBINS, Judge. This appeal arises from a suit filed by appellee against appellants in Greene County Chancery Court requesting relief under the Arkansas Trade Secrets Act, specifically seeking an injunction, damages and attorney's fees. Appellants are Shonda Brown, Shenia Biggs, Glendia Thomas, and Katrena Freeman, who work for Unique Design Wholesale, Incorporated, also named as a defendant in the complaint (collectively "Unique"). Appellee is Ruallam Enterprises, Incorporated, doing business as Lam Containers ("Lam"). For the unauthorized use of trade secrets, Lam was awarded a judgment for $50,000.00 plus $10,000.00 for its attorney's fees. Both parties appeal the amount of damages awarded. We reverse and remand for the chancellor to reconsider and recalculate the damages owing to Lam.

The parties to this action operate telemarketing companies that sell products such as baskets, silk flowers, containers, and other items used in the florist industry. Both companies are based in Paragould, Arkansas. Their marketing is designed to sell these items to operating florists all over the United States for use in their shops. Lam initiated this action seeking an injunction and damages for alleged trade secret misappropriation, which it alleged was accomplished by Unique's employees, most of whom were former employees of Lam. Lam contended that these employees had taken Lam's index cards containing customer information and were using this information in Unique's competing business. According to Lam, the information on those cards constituted trade secrets protected by the Arkansas Trade Secrets Act. The information included customer buying history, the contact person, and the pricing structure.

On November 1, 1999, Lam's request for an immediate order of delivery of Lam's property was heard. At the conclusion of that

preliminary hearing, the sheriff was dispatched to retrieve from Unique any materials owned by Lam and protected as trade secrets; index cards and computer sheets were recovered from Unique's offices. Another hearing was conducted on November 18, 1999, to determine if a preliminary injunction was warranted, and the chancellor found that Unique had in fact misappropriated Lam's trade secrets, a finding which is not in dispute on appeal. A forty-five-day temporary restraining order was entered preventing Unique from contacting, selling to, or engaging in any business with, those customers to whom Lam had sold product within the last year. Lam was instructed to provide a list of those prohibited contacts.

Subsequent hearings were conducted at Lam's request to determine whether Unique was in contempt for continuing to use information from the index cards by soliciting business from those customers, in violation of the preliminary injunction. The hearing on the first motion for contempt was conducted on January 31, 2000, and in that hearing Unique admitted that it had mistakenly called some of Lam's customers, but these mistakes were attributed in part to Lam's preparation of less-than-clear customer lists. Because the acts of Unique were found not to be willful, contempt was not entered. The chancellor reserved the issue of damages to a later hearing. A second motion for contempt was heard on February 23, 2000, and resulted in a finding that Unique had committed numerous contacts in violation of the preliminary injunction. This led the chancellor to extend the temporary restraining order, but no specific contempt finding was made.

The third and fourth motions for contempt were consolidated with the trial on damages. At the final hearing conducted on April 19, 2000, the parties presented testimony by expert witnesses, both certified public accountants, supporting their respective positions as to their profit margins, or lack thereof. Unique averred that Lam had not suffered damages at all, and Lam asserted that it had lost profits in the amount of $313,564.00, calculated from the difference in gross profits between 1998 and 1999. The chancellor rendered a judgment in the amount of $50,000.00 as the unjust enrichment retained by Unique. The chancellor arrived at this amount by taking Unique's gross sales ($278,385.65) minus freight costs ($36,190.14), multiplied by a ten-percent profit multiplier. This calculation produced the amount of $24,219.55, which the chancellor chose to double, and then round off, resulting in a final figure of $50,000.00. The concluding sentence stated that this amount was justified by the circumstances, "which included four contempt hearings."

Unique moved for a new trial, which was deemed denied by operation of law. A timely notice of appeal and a timely notice of cross-appeal were filed from the order assessing damages. Unique argues on appeal that the chancellor erred in awarding damages because appellee failed to prove damages in any amount, and, in the alternative, that if any damages were owing to appellee, the amount was miscalculated and should be reduced to $24,219.55 or should be remanded to the trial court for a recalculation. Lam cross-appeals the calculation of damages, asking that this court raise the damages award to $313,564.00, an amount suggested by the difference in gross profits that Lam generated in 1998 versus 1999. Lam alternatively argues that if we do not award the amount it deems appropriate, then the award given should either be upheld or the case remanded to the chancellor for a recalculation. We hold that this case must be reversed and remanded.

■ The standard of review of chancery cases is well settled. Chancery cases are tried de novo on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *See Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999). A finding is clearly erroneous when, although there is evidence in the record to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* With regard to findings of fact, we give due deference to the superior position of the chancellor to weigh the credibility of the witnesses. *Hunt v. Hunt*, 341 Ark. 173, 15 S.W.3d 334 (2000). However, a chancellor's conclusion on a question of law is given no deference on appeal. *See Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000); *City of Lowell v. M&N Mobile Home Park*, 323 Ark. 332, 916 S.W.2d 95 (1996).

■ The damages at issue in this appeal were awarded pursuant to the Arkansas Trade Secrets Act, codified at Ark. Code Ann. §§ 4-75-601 through 4-75-607 (Repl. 1996). A trade secret is defined in the Act as information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; a trade secret is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Ark. Code Ann. § 4-75-601(4)(A) and (B). Because the parties do not dispute the finding of the chancellor that the pieces of information contained on the index cards were trade secrets, we will not reiterate the factors used to determine whether information constitutes a trade secret. Whether Lam was entitled to the award of attorney's fees reflected in the order is not at issue

before us either, and we do not discuss the statutory authority that permits such an award or the propriety of such an award in this case. We do address, however, the amount of damages, if any, that was warranted by the taking of these trade secrets.

■ Arkansas Code Annotated section 4-75-606 (Repl. 1996) authorizes recovery to be awarded in the event of a violation of the Act, and it states:

> (a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation.
> (b) A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

Our legislature did not define "actual loss." In *Saforo & Associates, Inc. v. Porocel Corp.*, 337 Ark. 553, 991 S.W.2d 117 (1999), the Arkansas Supreme Court addressed for the first time the calculation of damages in the trade-secret context. The supreme court declared this statute ambiguous and construed it to mean that damages are to be calculated by determining either the plaintiff's lost profits or the defendant's gain, but not by a combination of the two. The rule was stated that, "a complainant may recover either his own lost profits or the defendant's profits, whichever affords the greater recovery." *Id.* at 567, 991 S.W.2d at 124. The supreme court then reversed and remanded the case so that the chancellor could recalculate the proper amount of damages. The supreme court in *Saforo* did not answer the question of whether profit or gain was to be calculated on a gross or net basis, or whether deductions could be made and for what expenses.

We must examine the wording of the order to determine what exactly was done. The chancellor's order read in relevant part:

> As a result and proximate cause of the Defendants' willful and intentional conduct, the Defendants have been unjustly enriched in the amount of $50,000.00. Said sum is determined by taking the gross sales, as reflected in Plaintiff's Exhibit #1, less freight, at 10%, to determine the net profit for that period reflected in Exhibit #1, and then multiplied by two (2) and rounded-off to $50,000.00, which sum the Court determines to be the proper measure of damage when the profits earned by Defendants and loss to Plaintiff's business are compared. In addition, the Court concludes that

the circumstances including four contempt hearings justify the damages assessed.

We are convinced that the chancellor attempted to calculate damages based upon a hybrid formula, which has specifically been rejected by our supreme court.

█ Unjust enrichment is the principle that one person should not be permitted to unjustly enrich himself at the expense of another, but should be required to make restitution for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). To be unjustly enriched, a party must have received something of value to which he was not entitled and that he should restore. *Id*. Unjust enrichment in this context must mean the benefit conferred upon the defendant by the profit margin earned as a result of the wrongful taking of trade secrets. *See Saforo, supra.*

██ Thus, we are faced with further interpreting the damages statute beyond that answered in *Saforo*. Each of the parties propose various calculations, ranging from no damages at all, to the profit earned by Unique without doubling the figure, to the ruling made by the trial court, to the difference in Lam's gross profits between 1998 and 1999. We hold that the proper method of calculation is on the basis of net profit, whether lost by the injured party or gained by the wrongdoer, based upon our examination of authority from across the United States, and we reverse and remand to the chancellor with instructions to recalculate the damages award. *See* Rosenhouse, *Proper Measure and Elements of Damages for Misappropriation of Trade Secrets*, 11 A.L.R. 4th 12 (1982) and cases cited therein. Due to Unique's appropriation of Lam's trade secrets, Lam is entitled to recover either its resulting lost net profits or that portion of Unique's net profits by which it has been unjustly enriched, whichever affords the greater relief.

██ Because there is such a variance in the expert opinions offered to the trial court, we believe the chancellor is in a better position to weigh the evidence and to consider the basis of the respective experts' opinions. Affording the "greater relief" is not inconsistent with the principle that the harmed party is to be made whole, and this is commanded by Arkansas' highest court. *See* Felix Prandl, *Damages for Misappropriation of Trade Secret*, 22 TORT & INS.

L.J. 447 (1987); *Saforo, supra.* We further state that the chancellor erred as a matter of law in doubling the figure determined to be Unique's profit, as this is not authorized by statute. This is in the nature of punitive damages, which are not expressly included in the Arkansas Trade Secrets Act. Again, the purpose of the damages allowed is to make the injured party whole, not punish the wrong-doer or provide a windfall. Nor is there any authority to "round off" the profit once a figure is reached, and we hereby state that this was error.

While we acknowledge that the chancellor was attempting to do equity in the face of an ambiguous statute and with little guidance from case law, we are convinced that reversible error occurred. We remand for a reconsideration of Lam's "actual loss" and Unique's "unjust enrichment" in light of our opinion.

VAUGHT and CRABTREE, JJ., agree.