R.K. ENTERPRISE, LLC d/b/a Nationwide Nurses, a Nevada Limited Liability Company, Katherine Hefley, Mary Burks, Traca Lane, and Raymond Hefley *v.* PRO-COMP MANAGEMENT, INC. d/b/a The Right Solutions, an Arkansas Corporation, The DLJ Wright Industries, Inc., d/b/a The Right Solutions, an Oklahoma Corporation, and Amedistaff, LLC, d/b/a The Right Solutions, a Delaware Limited Liability Company

03-409                                                          158 S.W.3d 685

Supreme Court of Arkansas
Opinion delivered April 1, 2004

[Rehearing denied May 6, 2004.]

566

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Hermann Ivester*; and *Dale W. Finley*, for appellants.

*Hudson, Woods, & Snively, LLP*, by: *Michael Hodson*, for appellees.

RAY THORNTON, Justice. This case presents an issue of first impression whether a determination of damages on the basis of tortious conversion and conspiracy to convert and to use trade secrets and confidential information is displaced or preempted by the language of the Arkansas Trade Secrets Act ("Trade Secrets Act"), codified at Ark. Code Ann. § 4-75-601 *et seq.* (Repl. 2001). Because we conclude that the Trade Secrets Act prescribes an exclusive remedy for damages for misappropriation of trade secrets, we hold that the trial court's award of damages for tortious conversion and conspiracy was reversible error, and we reverse and remand.

Appellees, Pro-Comp Management, Inc., an Arkansas corporation, together with DLJ Wright Industries, Inc., an Oklahoma corporation, and Amedistaff, LLC, a Delaware limited liability

company, owned and controlled by Diana Wright, were each doing business as The Right Solutions ("TRS"). TRS had commenced nurse-staffing services in 1996, and entered the business of providing travel nurses to facilities in Arkansas, Oklahoma, and adjacent states in August of 2000.

Appellant, Katherine Hefley, was designated as manager of TRS's Harrison office in April, 2000, and appellant, Mary Burks, was hired by TRS on October 20, 2000. Both Ms. Hefley and Ms. Burks resigned their positions on April 20, 2001. Ten days later, they were hired by appellant, R.K. Enterprise, LLC, a Nevada limited liability company formed in April of 2001 by appellant, Raymond Hefley, for the purpose of providing travel nurses under the name, Nationwide Nurses, LLC ("Nationwide"). Before Nationwide was formed, appellant, Traca Lane, had been fired by TRS on March 15, 2001, and was hired by Nationwide in late May of 2001.

During the time that Ms. Hefley, Ms. Burks, and Ms. Lane were TRS's employees, each of them had access to confidential information of TRS. Each of them executed separate confidentiality and non-compete agreements with TRS.

On April 25, 2001, Diana Wright, TRS president, became aware that Ms. Hefley and her ex-husband, appellant Raymond Hefley, were starting a medical staffing agency in Marble Falls under the name of Nationwide. Shortly thereafter, Ms. Wright learned that the office of Nationwide was located in Mr. Hefley's apartment. A TRS employee obtained the phone number of Nationwide, called the office, and learned that Ms. Burks and Ms. Lane worked for them.

Upon investigation, TRS learned that a number of confidential documents had been removed from the TRS offices in Tontitown and Harrison, including original documents from the individual nurse employee files, other files containing social-security numbers and bank account numbers, pre-paid phone cards, travel packets and travel folders, tests developed by TRS to be administered to potential nurse employees, and a computer program generated by and for the exclusive use of TRS. Additionally, it was discovered by TRS that appellants Hefley, Burks, and Lane had individually solicited TRS employees to become the employees of Nationwide.

Ms. Wright, as president of TRS, filed complaints with the Washington County prosecuting attorney for theft of property, a

class B felony, in violation of Ark. Code Ann. § 5-36-103 (Repl. 1997), against Ms. Hefley and Ms. Burks. On May 23, 2001, those arrest warrants were issued.

On May 30, 2001, the Newton County Sheriff's Department executed a search warrant for Nationwide's office. The search was conducted in the presence of appellants, and many documents, such as numerous lists of nurses, and Nationwide's computer, were seized. All material, including any confidential information, was impounded, and was not available for any of the parties until it was returned to Nationwide by a court order dated December 11, 2001. Criminal charges against Ms. Hefley and Ms. Burks were subsequently dismissed.

Nationwide had its first travel nurse in the field on June 27, 2001, and did not regain access to the seized material until December 14, 2001, when it was returned by court order.

On January 22, 2002, TRS filed an amended complaint against all appellants, alleging fraud, breach of noncompetition/confidentiality contracts, misappropriation of trade secrets in violation of the Arkansas Theft of Trade Secrets Act, conversion, and civil conspiracy. In its complaint, TRS made allegations against appellants Hefley, Burks, and Lane for breach of fiduciary duty and for breach of duty of loyalty. TRS requested both actual and punitive damages, as well as injunctive relief.

Following three days of a bench trial, the trial court concluded that appellants, Katherine Hefley, Mary Burks, and Traca Lane did not breach the non-competition provision of their contract with TRS, but found that they breached the confidentiality and trade-secret provisions of the contracts by removing from TRS confidential information, property, and trade secrets of TRS, and disclosing that information to Nationwide and its agents.

The trial court ruled that appellants had misappropriated trade secrets in violation of the Trade Secrets Act, and required appellees to elect whether to seek recovery under the provisions of the Trade Secrets Act or to seek recovery for misappropriation of trade secrets on the basis of tort claims of conversion and conspiracy for misappropriation of trade secrets. Appellees did not contest or perfect an appeal or cross-appeal from the trial court's order requiring the election of remedies, but chose to rely upon the evidence of damages under tort claims of conversion and conspiracy. The abstract before us does not reflect that TRS established its lost profits or Nationwide's gain resulting from

misappropriation of trade secrets. The trial court awarded damages of $262,303.00 based upon the market value of the trade secrets, including databases, tests, lists, and computer programs, and appellants bring this appeal from that order.

On appeal, appellants argue that the trial court erred in awarding damages based on tort claims, a remedy that appellants contend is displaced or preempted by the plain language of the Trade Secrets Act. Appellants also raise additional points on appeal, arguing that the trial court erred in finding that the items found in appellants' possession were trade secrets, that the trade secrets were misappropriated by appellants, that appellants Hefley, Burks, and Lane had breached a contract with appellee, and that a conspiracy was established.

■ With regard to the trial court's finding that the items at issue are trade secrets that were misappropriated, we note that our standard of review is whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Finagin v. Arkansas Development Finance Authority*, 355 Ark. 440, 139 S.W.3d 797 (2003). In this instance, we cannot say that the trial court was clearly erroneous. Accordingly, based upon our standard of review, we affirm the trial court's finding that there was a misappropriation of trade secrets.

We turn to appellant's first point on appeal, namely that the trial court erred in allowing the recovery of damages for tort claims of conversion and conspiracy. Appellants contend that the language of the Trade Secrets Act relating to displacement of other relief for misappropriation of a trade secret raises an issue of statutory construction, and that the remedy provided by Ark. Code Ann. § 4-75-606 excludes recovery on other grounds sounding in tort.

■ This issue requires us to interpret provisions of the Trade Secrets Act, codified at Ark. Code Ann. § 4-75-601 *et seq.* Because the issue now facing this court is one of statutory interpretation, our review is *de novo,* as it is for this court to decide what a statute means. *Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003).

■ When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.

*Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 21-22, 89 S.W.3d 884 (2002); *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Cave City, supra; Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

We turn to our interpretation of the Trade Secrets Act in light of the applicable standard of review. Appellants argue that the Trade Secrets Act preempts other relief, particularly damages in tort, when trade secrets are involved. Appellants cite the provisions of Ark. Code Ann. § 4-75-602 (2001) as the basis for the trial court's error.

The Trade Secrets Act, which was adopted in 1981, is based on the Uniform Trade Secrets Act. *See Saforo & Assoc., Inc. v. Porocel Corp.*, 337 Ark. 553, 991 S.W.2d 117 (1999). Arkansas Code Annotated § 4-75-602 provides:

(a) *This subchapter displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret.*

(b) This subchapter does not affect:

(1) Contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or

(2) Criminal liability for misappropriation of a trade secret.

*Id.* (emphasis added).

While the statutory language appears to be plain and unambiguous, we note that we have not interpreted or applied this displacement provision of our Trade Secrets Act. However, the

United States District Court for the Eastern District of Arkansas considered that issue in *Vigoro Industries, Inc. v. Cleveland Chemical Co.*, 866 F. Supp. 1150 (E.D. Ark. 1994) (affirmed in part; reversed in part on other grounds in *Vigoro Industries, Inc. v. Crisp*, 82 F.3d 785 (8th Cir. 1996)). The federal district court stated:

> The Court notes that the Arkansas Trade Secrets Act ("the Act"), Ark. Code Ann. § 4-75-601 *et seq.*, is Vigoro's exclusive remedy for the Defendants' alleged misappropriation of Vigoro's trade secrets. . . . Accordingly, were the Court to determine that the information Vigoro seeks to protect as a trade secret qualified as such, and that the Defendants misappropriated those trade secrets, then Vigoro's exclusive remedy for improper use of that information would be pursuant to the Arkansas Trade Secrets Act. In that situation, Vigoro would not be able to rely on the acts constituting misappropriation of a trade secret to support its other causes of action. That situation does not arise here, however, because the Court concludes that the information that Vigoro seeks to protect as a trade secret is not entitled to protection as such under the Arkansas Trade Secrets Act.

*Vigoro, supra.*

Other jurisdictions have interpreted statutory provisions similar to our own. *See also Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284 (11th Cir. 2003) (interpreting Georgia law and holding that the Georgia Trade Secrets Act superseded claims for conversion, breach of confidential relationship and duty of good faith, unjust enrichment, and quantum meruit); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Dela. 2002) (holding that the Delaware Trade Secrets Act precluded plaintiff's common law unfair-competition and conspiracy claims); *Tronitec v. Shealy*, 547 S.E.2d 749 (Ga. App. 2001) (holding that Tronitec's claims for conversion and theft were superseded by the Georgia Trade Secrets Act); *Frantz v. Johnson*, 999 P.2d 351 (2000) (holding that the Nevada Uniform Trade Secrets Act displaced common law tort claims); *Micro Display Systems, Inc. v. Axtel*, 699 F. Supp. 202 (D. Minn. 1988) (holding that the Minnesota Uniform Trade Secrets Act displaced common law causes of action for misappropriation of trade secrets).

As a general rule, courts examine whether the claim is based upon the misappropriation of a trade secret. If so, the displaced claim must be dismissed. *Bliss Clearing Niagra, Inc. v.*

*Midwest Brake Bond Co.*, 270 F. Supp. 2d 943 (W.D. Mich. 2003). The South Dakota Supreme Court has succinctly summarized the displacement analysis in *Weins v. Sporleder*, 605 N.W.2d 488 (2000), where it stated:

> South Dakota's adoption of the Uniform Trade Secrets Act, SDCL 37-29-7, prevents a plaintiff from merely restating their trade secret claims as separate tort claims. In analyzing claims for the purpose of applying the displacement provision, the issue is not what label the plaintiff puts on their [sic] claims. Rather the court is to look beyond the label to the facts being asserted in support of the claims. A plaintiff may not rely on acts that constitute trade secret misappropriation to support other causes of action.

*Weins, supra* (citations omitted).

Informed by the analysis of the South Dakota Supreme Court and other jurisdictions, as well as that articulated by the United States District Court for the Eastern District of Arkansas, we rely upon our own interpretation of the plain meaning of our Trade Secrets Act. Here, Arkansas Code Annotated § 4-75-602 applies to the present case because appellees' tort claims of conversion and conspiracy stem from the same acts constituting a violation of the Trade Secrets Act. Therefore, based upon the plain language of Ark. Code Ann. § 4-75-602, we conclude that the statutory language of the Trade Secret Act displaces or preempts the award of damages based upon tort claims for conversion of trade secrets, as well as other tort claims such as conspiracy, that may arise under a claim for misappropriation of trade secrets. Accordingly, the trial court committed reversible error in its award of damages for tortious conversion and conspiracy.

We now turn to an analysis of what proof of damages TRS is required to show under the Trade Secrets Act. Under the provisions of our Trade Secrets Act, the exclusive method by which damages are measured is stated in Ark. Code Ann. § 4-75-606, which provides:

> (a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation.

> (b) A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

*Id.* Arkansas Code Annotated § 4-75-606 includes the recovery of actual loss plus any unjust enrichment when the misappropriation of trade secrets is involved.

In *Saforo, supra,* we declared this statute ambiguous, as the General Assembly did not define "actual loss," and we construed it to mean that damages are calculated by determining either the plaintiff's lost profits or the defendant's gain, "whichever affords the greater recovery." *Id.* The court of appeals has interpreted the statute on the basis of net profits. *See Brown v. Ruallam Enterprises, Inc.,* 73 Ark. App. 296, 44 S.W.3d 740 (2001).

In the present case, the trial court, having concluded that there was a trade secret, required appellees to elect whether to seek recovery under a breach-of-contract claim and a violation of the Trade Secrets Act or, in the alternative, to seek recovery for misappropriation of trade secrets on the basis of tort claims of conversion and conspiracy. Appellees elected to recover under the tort claims of conversion and conspiracy, and the trial court awarded damages of $262,303.00 based upon the market value of the trade secrets.

The abstract before us does not establish TRS's lost profits or Nationwide's gains resulting from the misappropriation of trade secrets. Instead, TRS, through the testimony of Diana Wright, put on testimony of the fair-market value of the property that was converted. The trial court's order states:

> The court finds that there was sufficient evidence of fair market value and that it came from two sources. First, Diana Wright testified that she had previously owned such a business and had sold such a business and testified regarding the profits of that business and the sale of the business produced. Secondly, Plaintiff's Exhibit #40 provided Diana Wright's summary of the fair market value of nurse databases, the conversion of tests developed in house for verifying the competency of nurses, the labor costs of developing client hospitals, and the computer program developed, namely Staff Pro. The court finds that Diana Wright's testimony, coupled with her experience in the field, supports [a $262,312.00 award.]

Such a computation of damages did not address the measure of lost profits suffered by TRS or the gain realized by appellants as result of the misappropriation of trade secrets as required by Ark. Code Ann. § 4-75-606. With regard to the specific remedy authorized by the statute, we note that appellees admitted at the

conclusion of the trial that the remedy for "the theft of trade secrets . . . would be some sort of disgorgement of profits, which would be difficult, if not impossible, for the court to determine on the three individual defendants [Hefley, Burks, and Lane]." To the same effect, the trial court found that the appropriate remedy of damages under the Trade Secrets Act is "to disgorge profits made by the relevant Defendants and the [trial] court finds that the three female defendants [Hefley, Burks, and Lane] have no profits to disgorge."

 The abstract before us does not reflect a determination of the issues relating to disgorgement of profits by Nationwide or the recovery of TRS's lost profits, whichever affords the greater recovery, as articulated in Ark. Code Ann. § 4-75-606 and *Saforo*, *supra*. Accordingly, we reverse and remand for a determination of damages under the statutory provisions of our Trade Secrets Act.

Reversed and remanded.