In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 05-1273 & 05-1399

HECNY TRANSPORTATION, INC.,

*Plaintiff-Appellant*,
*Cross-Appellee*,

*v.*

GEORGE CHU,

*Defendant-Appellee*,
*Cross-Appellant*,

and

DAISY CHU, PLATINUM INTERNATIONAL
LOGISTICS, INC., and WILFREDO JAMILOSA,

*Defendants-Appellees*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 98 C 7335—**Samuel Der-Yeghiayan**, *Judge*.

ARGUED SEPTEMBER 20, 2005—DECIDED OCTOBER 31, 2005

Before EASTERBROOK, MANION, and SYKES, *Circuit
Judges*.

EASTERBROOK, *Circuit Judge*. Hecny Transportation,
based in Hong Kong, operates a worldwide shipping

network. Between 1989 and 1998 George Chu was the manager of Hecny's operations in Chicago. Hecny conducted an audit after he left and concluded that he had used Hecny's assets and personnel to operate his own ventures out of the Chicago station. This suit under the diversity jurisdiction charges George Chu with a breach of his fiduciary obligations and several related torts, plus breach of contract. To simplify the exposition we ignore the additional defendants.

Hecny's complaint charges Chu with diverting its assets (its physical plant, its employees' time, and its information such as customer lists) to competing businesses, which Chu allowed to operate from Hecny's premises. These activities may be classified as the diversion of corporate opportunities, as fiduciary defalcations, and as outright theft. (Hecny adds that when Chu left he took files, computers, software, and other office equipment with him, adding theft of physical assets to theft of business.) Chu denied these allegations and filed a counterclaim, seeking a return of his investment in the business plus bonuses and profit overrides that he contends were due him by contract; he accuses Hecny of jiggering the accounting numbers to avoid paying him what he had coming. The district court granted judgment for Chu on Hecny's claims. Although the judge called this summary judgment, he did not mention any evidence of record. Instead he deemed Hecny's complaint self-defeating. 2005 U.S. Dist. LEXIS 5417 (N.D. Ill. Mar. 30, 2005). The court granted judgment in Hecny's favor on Chu's counterclaims, again without considering any evidence.

Section 8(a) of the Illinois Trade Secrets Act, 765 ILCS 1065/8(a), is the basis on which the district judge resolved most of the case. This statute abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself. Hecny accused Chu of misusing customer information,

which Hecny calls a trade secret. The district judge thought that this knocked out all of Hecny's other claims. As for Hecny's trade-secret claims (based on both contracts with Chu and the statute): the judge ruled that the identity of Hecny's customers is not a trade secret in the first place, so Chu prevailed on this theory too. This part of the disposition, at least, is correct. Hecny does not contend that its customers' identities were confidential information; they were (it concedes) widely known in the trade, and it did not take any steps (such as encryption or restricted-access rooms) to maintain their confidentiality. 765 ILCS 1065/2(d)(2). But the absence of trade secrets does not doom Hecny's other contentions.

Section 8(a) says that "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." Misappropriation of a trade secret differs from other kinds of fiduciary defalcations, which the statute therefore does not affect. If Hecny had put its customer list on its web site for the world to ogle, that would not have permitted its managers to go into covert competition using Hecny's own depot and staff, or to walk off with computers and fax machines, as Hecny alleges Chu did. Trade secrets just have nothing to do with Hecny's principal claims.

Illinois courts have had very little to say about the effect of §8(a), perhaps because it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret. Both sides have cited decisions by federal district judges interpreting Illinois law, but no pertinent decisions by the state judiciary. Decisions of federal district courts on issues of state law have neither authoritative nor precedential force, see, e.g., *Old Republic Ins. Co. v. Chukah & Tecson, P.C.*, 84 F.3d 998, 1003-04 (7th Cir. 1996); *Anderson v. Romero*,

72 F.3d 518, 525 (7th Cir. 1995), so we need not analyze them.

Because the Illinois Trade Secrets Act is based on the Uniform Trade Secrets Act of 1985, we can check our intuition about its preemptive force by asking how other states have understood its scope. The dominant view is that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets. *R.K. Enter-prises, L.L.C. v. Pro-Comp Management, Inc.*, 356 Ark. 565, 158 S.W.3d 685 (2004); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894 (Del. 2002); *Weins v. Spordleder*, 605 N.W.2d 488 (S.D. 2000). The Uniform Law Commissioners' comment to the model act supports this approach, stating: "The [provision] does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." We would be shocked if the Supreme Court of Illinois were to disagree; nothing in its jurisprudence suggests that it would. This is not a close question. An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record.

Hecny wants not only damages but also an injunction enforcing Chu's covenant not to compete. The district court denied this request on the ground that the lack of trade secrets or "protectable interests" such as long-term cus-tomers vitiates the covenant. Illinois law recognizes an exception to this principle for covenants given by entrepre-neurs as part of a joint venture. See *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005) (discussing Illinois law). Hecny says that Chu was a joint venturer because he invested in the Chicago depot and received a portion of its profits; he responds that his investment was so small (about $10,000) that he should be treated as an employee rather than an entrepreneur. The dispute need

not be resolved, because Chu's covenant expired long ago: The district court allowed this suit to linger on its docket for seven years before decision, even though a request for an injunction to enforce a restrictive covenant should be adjudicated with dispatch. (Judge Der-Yeghiayan, who was assigned to this litigation following his appointment in 2003, does not bear responsibility for the court's failure to act before the covenant expired.) Today only damages are available, and as it seems unlikely that they could be established given the lack of trade secrets the litigation may be simplified by confining attention on remand to the events while Chu was the Chicago station's manager and any injury they may have caused.

We have so far treated Hecny's allegations as the truth, as is essential when a case is resolved on the pleadings. This is also the required standard for evaluating a counter-claim dismissed on the pleadings, so now we must turn the tables and assume (as Chu alleges) that everything Hechy says about him is a lie, and that he has been cheated out of his investment and profits. The district judge dismissed Chu's effort to state a claim against Hecny Transportation Ltd. (a Hong Kong corporation and parent of the U.S. subsidiary that is the plaintiff in this suit) on the ground that the parent is not a party to the joint venture agreement between Chu and the subsidiary. That's a sensible disposition; Illinois does not hold parent corporations answerable for the legal wrongs of their subsidiaries, unless (as Chu does not allege) the subsidiary deceived its trading partner into thinking that it was dealing with the parent directly or committed an equivalent fraud about relations within the corporate family. See, e.g., *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384 (7th Cir. 1994) (Illinois law); *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519 (1991); *Pederson v. Paragon Pool Enterprises*, 214 Ill. App. 3d 815, 822, 574 N.E.2d 165 (1st Dist. 1991).

Illinois does not treat instructions given to a subsidiary corporation as actionable against a parent that did not itself commit a wrong directly against the complaining party. See *Forsythe v. Clark USA, Inc.*, 2005 Ill. LEXIS 960 (1st Dist. 2005); cf. *Esmark, Inc. v. NLRB*, 887 F.2d 739, 756 (7th Cir. 1989). As this subsidiary is solvent, it is unnecessary to decide whether Illinois might ever treat a parent as responsible for aiding and abetting a subsidiary's acts. But what of Chu's claims against Hecny Transportation, Inc., the U.S. subsidiary? The district judge did not mention them, and it is impossible to see how the decision dismissing them can be sustained. Hecny U.S. is no more entitled to steal from Chu than Chu is to steal from his ex-employer. Who cheated whom is something that must be resolved at trial rather than on the complaints.

The judgment is affirmed to the extent that it dismisses the counterclaim against Hecny Hong Kong and all of Hecny U.S.'s claims based on misappropriation of trade secrets. The decision not to issue an injunction enforcing the covenant not to compete also is affirmed. The judgment otherwise is vacated, and the case is remanded for decision on the merits. Circuit Rule 36 will apply on remand.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*