164 P.3d 524 (2007)
Mary Jo THOLA, D.C., and Sunset Chiropractic and Wellness Center, Inc., a Washington corporation, Respondents,
v.
Martin R. HENSCHELL, D.C. and Jane Doe Henschell and their marital community; Henschell Chiropractic, a Washington sole proprietorship and partnership, Appellants,
Alta D. Mahan, D.C. and John Doe Mahan and their marital community, Defendants.
No. 33953-6-II.
Court of Appeals of Washington, Division 2.
August 7, 2007.
*527 Jay Roderik Stephens, Kent, WA, Kenneth Wendell Masters, Shelby R. Frost Lemmel, Wiggins & Masters PLLC, Bainbridge Island, WA, for Appellant(s).
Constance Susan M. Martin, Marten Law Group PLLC, Seattle, WA, for Respondent(s).
QUINN-BRINTNALL, J.
¶ 1 This case requires that we address whether a future employer can be vicariously liable for the unlawful conduct of a future employee and the extent to which the Uniform Trade Secrets Act (UTSA)[1] preempts common law actions based on acts of trade secret misappropriation.
¶ 2 After working at Mary Jo Thola's Bonney Lake clinic for two and a half years, chiropractor Alta Mahan decided that she did not want to purchase Thola's practice and began looking for a job at another chiropractic clinic nearby. In November 2002, Mahan agreed with Martin Henschell that she would begin working for Henschell Chiropractic.
¶ 3 Henschell promised to pay Mahan a monthly salary of $3,800 and a $100 bonus for every new client Mahan added to his clinic's patient rolls. Mahan continued working for Thola for a few months and appropriated Thola's confidential client list. Mahan then used the confidential list to urge Thola's clients to transfer their care to Henschell Chiropractic. Many did.
¶ 4 Thola sued Mahan, Henschell, his wife,[2] and Henschell Chiropractic for violating the UTSA, breach of duty of loyalty, and tortious interference with a business expectancy. Thola also asserted that Mahan and Henschell were unjustly enriched through this tortious conduct.
¶ 5 A jury found Mahan personally liable for violating the UTSA, duty of loyalty, and tortious interference with a business relationship. And the jury found Henschell vicariously liable for Mahan's UTSA violation and tortious interference with a business expectancy. It found that Henschell was unjustly enriched by $28,712, and awarded $89,000 in damages against all defendants. Based on the UTSA and the jury's finding that Mahan acted willfully and maliciously, the trial court doubled the damage amount and awarded Thola her attorney fees and costs.
¶ 6 On appeal, Henschell[3] challenges the jury's verdict and award, arguing that Henschell cannot be vicariously liable for Mahan's acts before she became an employee and that the UTSA preempts common law claims based on acts of trade secret misappropriation.[4] We hold that a future employer may be vicariously liable if it knowingly benefits from a future employee's tortious conduct and that the UTSA preempts some of Thola's common law violation claims for acts of trade secret misappropriation. Because the damages award was not segregated, we cannot strike those portions related to the preempted causes of action and must reverse the entire damage award and remand for a new trial.

ANALYSIS
UTSA Preemption Generally
¶ 7 Henschell argues that the UTSA preempts Thola's claims. First, it asserts *528 that the UTSA does not contemplate vicarious liability. Second, it argues that the UTSA preempts Thola's common law claims and that the trial court's jury instructions on preemption were erroneous. We hold that a defendant may be vicariously liable under the UTSA. But we agree with Henschell that, to avoid multiple recoveries for a single trade secret violation, the UTSA preempts some of Thola's common law claims and that the trial court incorrectly instructed the jury on the law of preemption.
¶ 8 The UTSA prohibits misappropriation of trade secrets. Chapter 19.108 RCW. Before the legislature enacted the UTSA, the common law prohibited similar acts. See, e.g., J.L. Cooper & Co. v. Anchor Sec. Co., 9 Wash.2d 45, 64, 113 P.2d 845 (1941) (allowing equitable action against a former employee who used a confidential customer list in his new business venture). Our legislature and 46 other jurisdictions enacted the UTSA to make uniform traditional common law trade secret protections. RCW 19.108.910; Unif. Trade Secrets Act, 14 U.L.A. (Supp.2007 at 6-7). Accordingly, when possible, we construe the UTSA to achieve uniformity among jurisdictions that have enacted it. RCW 19.108.910.
¶ 9 But the UTSA is not a catch-all for industrial torts. Electro-Craft Corp. v. Controlled Motion, Inc., 332 N.W.2d 890, 897 (Minn.1983). The Act "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900(1). But it does not affect "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret." RCW 19.108.900(2)(a). Generally, taking an employer's confidential customer list without permission is a trade secret misappropriation. See Ed Nowogroski Ins., Inc. v. Rucker ("Rucker II"), 137 Wash.2d 427, 442, 971 P.2d 936 (1999).
Vicarious Liability For UTSA Violations
¶ 10 We must first answer whether vicarious liability is a valid theory under the UTSA. Thola alleged that Henschell violated the UTSA not directly, but vicariously through Mahan's actions. No Washington case has explicitly approved of applying principles of vicarious liability to the UTSA and the Act is silent on the matter. But we agree with the majority of jurisdictions addressing the issue and conclude that one may violate the UTSA vicariously and be held responsible for such violation.
¶ 11 "Vicarious liability is legal responsibility by virtue of a legal relationship." 16 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice § 3. 1, at 116 (3rd ed.2006). Generally speaking, a person may be vicariously liable, and thus legally responsible, for another's tort if the tortfeasor was an (1) employee acting in the course and scope of employment; (2) an agent whose tort is imputed to her principal; or (3) a family member for whom the other is legally responsible. 16 DeWolf & Allen, supra, at 116. Here, Thola alleged the first and second theories of vicarious liability.
¶ 12 RCW 19.108.900 suggests that general civil liability principles, including vicarious liability, are unaffected by the decision to enact the UTSA. The preemption clause to Washington's UTSA reads:
(1) This chapter displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret.
(2) This chapter does not affect:
(a) Contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or
(b) Criminal liability for misappropriation of a trade secret.
RCW 19.108.900 (emphasis added).
¶ 13 The goal of achieving uniformity among UTSA-enacting jurisdictions and the absence of Washington law requires that we survey other jurisdictions that have addressed the scope of vicarious liability under the UTSA as enacted in various states. RCW 19.108.910. All but one of the jurisdictions that have ruled on this question have held that the theory of vicarious liability is compatible with a UTSA cause of action. We agree with the majority's rulings.
¶ 14 Perhaps the clearest analysis of the scope of vicarious liability under the UTSA is *529 found in Newport News Industrial v. Dynamic Testing, 130 F.Supp.2d 745, 750-51 (E.D.Va.2001). In that case, the court held that the Virginia UTSA did not preempt vicarious liability. It reasoned that vicarious liability
is not an independent conflicting tort, civil claim or remedy. Rather, it is a legal precept that presupposes the existence of an underlying claim and assesses liability not because of the act giving rise to the claim but because of a certain status. . . . Because it does not "conflict" with the [Virginia UTSA] in any sense of the word, the preemption provision has no bearing upon the current inquiry.
Newport News Ind., 130 F.Supp.2d at 751. Further, "[w]hile the definition of `misappropriation' requires some type of misconduct or bad faith on the part of the misappropriator, nothing in the statute precludes liability for the employer due to the misconduct or bad faith of his employee conducted for the employer's benefit." Newport News Ind., 130 F.Supp.2d at 751. Virginia's UTSA is nearly identical to Washington's. See Unif. Trade Secrets Act, 14 U.L.A. at 536 (2005).
¶ 15 Courts in California and the federal system have also allowed vicarious liability claims under the UTSA. See, e.g., Ethypharm S.A. France v. Bentley Pharm., Inc., 388 F.Supp.2d 426 (D.Del.2005) (denying defendant's motion for summary judgment of a claim of vicarious liability in an action for a UTSA violation and intentional interference with actual and prospective business relationships); Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F.Supp.2d 941, 950 (N.D.Cal.2003) (inviting the plaintiff to replead vicarious liability if it "can more clearly allege actionable conduct by [the officer] outside the scope of his employment"); PMC, Inc. v. Kadisha, 78 Cal.App.4th 1368, 93 Cal. Rptr.2d 663 (Cal.Ct.App.2000) (holding that corporate officer defendants may be vicariously liable for their corporation's UTSA violations). These cases represent the holdings of a majority of jurisdictions that have addressed this issue.
¶ 16 The one case in which a court held that vicarious liability is not available under the UTSA is Infinity Products, Inc. v. Herbert Quandt & Fabri-Tech, Inc., 810 N.E.2d 1028 (Ind.2004). But the Indiana Trade Secrets Act differs. It contains a more stringent preemption clause than is found in the uniform text or in Washington. Indiana's clause reads:
The chapter displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law.
Ind.Code. Ann. § 24-2-3-1(c). The Indiana legislature rejected the broad uniform language embodied in RCW 19.108.900(2)(a), evincing, the Infinity Products court held, the Indiana legislature's intent to prohibit vicarious liability. But Washington's UTSA preemption clause differs from Indiana's and the Infinity Products court's analysis does not apply.
¶ 17 Thus, we follow the majority of jurisdictions in concluding that vicarious liability is a general theory of civil liability that is not based on trade secret misappropriation and, therefore, the UTSA does not preempt it. See RCW 19.108.900(2)(a).
UTSA Preemption of Common Law Causes of Action
¶ 18 Henschell next asserts that the UTSA preempted Thola's common law causes of action for (1) tortious interference with a business expectancy; (2) breach of the duty of loyalty; and (3) unjust enrichment, and that the trial court erred when it denied their motion for a directed verdict on these preempted claims.
¶ 19 In reviewing a trial court's decision to deny a motion for directed verdict, we apply the same standard as the trial court. ESCA Corp. v. KPMG Peat Marwick, 86 Wash.App. 628, 639 n. 14, 939 P.2d 1228 (1997), aff'd, 135 Wash.2d 820, 959 P.2d 651 (1998). Unlike in the criminal context, we may review the denial of a motion for directed verdict after the jury renders its verdict. See, e.g., Lewis v. Doll, 53 Wash.App. 203, 207, 765 P.2d 1341, review denied, 112 Wash.2d 1027 (1989). But a directed verdict is appropriate only if the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain *530 a verdict for the nonmoving party. Harris v. Drake, 152 Wash.2d 480, 493, 99 P.3d 872 (2004). Where a directed verdict motion rests upon a question of statutory interpretation, we interpret the statute de novo. Stuckey v. Dep't of Labor & Indus., 129 Wash.2d 289, 295, 916 P.2d 399 (1996).
¶ 20 A plaintiff "may not rely on acts that constitute trade secret misappropriation to support other causes of action." Ed Nowogroski Ins., Inc. v. Rucker ("Rucker I"), 88 Wash.App. 350, 358, 944 P.2d 1093 (1997), aff'd, 137 Wash.2d 427, 971 P.2d 936 (1999). A majority of UTSA jurisdictions: (1) assess the facts that support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim; and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim. Mortgage Specialists, Inc. v. Davey, 153 N.H. 764, 778-79, 904 A.2d 652 (N.H.2006). We note that proper application of this three-step analysis precludes duplicate recovery for a single wrong. We adopt this analytical framework as a helpful guide to determine whether, under the facts of the case, the UTSA preempts a civil claim.[5]
A. Tortious Interference With a Business Expectancy
¶ 21 Henschell argues that Thola's UTSA claim preempts the claim of tortious interference with a business expectancy. Thola responds that the UTSA does not preempt her tortious interference claim because it was not based on the misappropriated client list. Instead, she contends that evidence of Mahan's in-person client solicitation supports her business interference claim. To prevail on her tortious interference claim, Thola was required to prove that Mahan intentionally induced or caused the termination of a known business relationship for improper purposes or by improper means. The jury instructions defined "[i]nterference for improper purpose" as "interference with an intent to harm Mary Jo Thola and Sunset Chiropractic and Wellness Center." 6 Clerk's Papers (CP) at 1025.
¶ 22 Maria Kissner, a Thola staff member, testified that between December 16 and December 24, 2002, Mahan took about three times longer than usual to perform her chiropractic adjustments. Kissner also testified that, after receiving the longer appointments with Mahan, several patients broke from their typical pattern and refused to schedule a follow-up appointment. Kissner overheard Mahan discussing Henschell Chiropractic with Dan E., a patient whom Mahan treated and, after the discussion, Dan E. did not schedule another appointment at Thola Chiropractic. Dan E. also reportedly asked Kissner whether she was also going to follow Mahan to Henschell Chiropractic.
¶ 23 We agree with Thola that this evidence is distinct from that offered to prove a UTSA violation because it does not involve the acquisition or disclosure of confidential information. See RCW 19.108.010(2). And that, if believed, this evidence could support her tortious interference with a business relationship claim because a reasonable jury could conclude that Mahan, with an intent to harm Thola and her clinic, intentionally induced Dan E. and others to terminate their business relationship with Thola to benefit Henschell and Mahan. Thus, on the facts of this case, Thola's UTSA claim did not preempt her business interference claim.
B. Duty of Loyalty
¶ 24 Henschell also urges that we hold that Thola's UTSA claim preempted her duty of loyalty claim. But we do not reach this issue. Henschell lacks standing to challenge the judgment on this claim because the jury was not asked to find that Henschell was liable for Mahan's breach of the duty of loyalty.[6] Only an aggrieved party may seek *531 appellate review of an issue. RAP 3.1. Henschell is not aggrieved by the trial court's decision regarding Thola's duty of loyalty claim because this decision did not subject it to liability. Accordingly, we do not address the merits of this issue.
C. Unjust Enrichment
¶ 25 Henschell argues that Thola's UTSA claim precluded her unjust enrichment claim. We disagree. The UTSA expressly allows unjust enrichment claims. In addition to compensatory damages, "[a] complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." RCW 19.108.030(1).[7]
Jury Instructions
¶ 26 Parties are entitled to jury instructions that accurately state the law. Eagle Group, Inc. v. Pullen, 114 Wash.App. 409, 420, 58 P.3d 292 (2002), review denied, 149 Wash.2d 1034, 75 P.3d 968 (2003). We review jury instructions and statutory interpretation de novo. Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265 (2000); Rucker II, 137 Wash.2d at 436-37, 971 P.2d 936. Jury instructions are sufficient when they allow counsel to argue their case theories, do not mislead the jury, and, when taken as a whole, properly inform the jury of the law to be applied. Blaney v. Int'l Ass'n of Machinists, 151 Wash.2d 203, 210, 87 P.3d 757 (2004). Instructions that are merely misleading are not grounds for reversal unless they cause prejudice. Keller v. City of Spokane, 146 Wash.2d 237, 249, 44 P.3d 845 (2002). A clear misstatement of the law is presumed prejudicial. Thompson v. King Feed & Nutrition Serv., Inc., 153 Wash.2d 447, 453, 105 P.3d 378 (2005).
A. Preemption
¶ 27 Here, the trial court failed to instruct the jury on preemption and, thus, did not accurately state the law governing the jury's decision. Thola based her UTSA claim on Mahan's act of stealing and using the clinic's customer list. The majority of evidence Thola presented related to the theft of the clinic's customer list. Only two snippets of testimony related to Mahan's alleged in-person client solicitation. Moreover, Thola urged the jury to use evidence of Mahan's misappropriation of the client list to find in her favor on her common law violation claims.
¶ 28 Because the UTSA preempts common law actions based on trade secret misappropriation, as we previously held, the trial court should have instructed the jury that it could not consider evidence of Mahan's acts of trade secret misappropriation when it deliberated on Thola's common law actions. Rucker I, 88 Wash.App. at 358, 944 P.2d 1093.
¶ 29 The trial court's failure to instruct the jury that the law prohibits using the trade secret violation evidence to prove Thola's other claims prejudiced Henschell. Because the court did not instruct on the limits of this evidence, it is highly likely that the jury did as Thola urged and used the trade secret violation evidence to find for Thola on her other claims. Upon retrial, the trial court must properly instruct the jury on preemption and the limited use of trade secret appropriation evidence.
B. Verdict and Failure to Segregate Damages
¶ 30 The jury issued a general verdict. Thus, it is impossible for us to segregate the award and determine whether and how much it awarded in restitution and damages for preempted causes of action. We must, therefore, reverse the award in its entirety and remand for a new trial.
¶ 31 We address the following issues because they will likely arise during retrial.
*532 C. Ratification
¶ 32 Henschell also contends that the trial court's ratification instruction misstates the law. We disagree.
¶ 33 Instruction No. 23 reads:
Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.
Even if an agent acts without her principal's authority, the principal may nevertheless ratify the agent's act by acting with full knowledge of the act, accepting the benefits of the act or intentionally assuming the obligation imposed without inquiry. Actual or constructive knowledge of the act will suffice to support a determination of ratification.
If you find that Martin Henschell or Henschell Chiropractic acted with full knowledge of Alta D. Mahan's actions and accepted the benefits of her actions, then Martin Henschell and Henschell Chiropractic ratified Alta D. Mahan's acts.
6 CP at 1027 (emphasis added).
¶ 34 A principal may be liable under the ratification theory only if he or she accepts the benefits of an act with full knowledge of that act's material facts. Consumers Ins. Co. v. Cimoch, 69 Wash.App. 313, 323, 848 P.2d 763 (1993). Henschell argues that the trial court's ratification instruction "erroneously impl[ies] that mere benefit is enough." Br. of Appellant at 38. To the contrary, the trial court's ratification instruction twice emphasizes to the jury that Henschell must have had "full knowledge" of Mahan's acts in order to find that Henschell ratified Mahan's conduct. 6 CP at 1027. The trial court's ratification instruction was proper.[8]
Motion to Direct Verdict For Vicarious Liability
¶ 35 Henschell next contends that because Mahan was not an employee when she committed the tortious acts, as a matter of law they are not vicariously liable for Mahan's torts and the trial court erred when it denied their motion for a directed verdict on this ground.
¶ 36 Henschell first argues that a directed verdict was appropriate because the evidence was insufficient to prove that Mahan was an agent acting within the scope of employment. This argument has three parts: (1) Henschell had no right or ability to control Mahan's work before her first day on the job; (2) Mahan acted willfully and maliciously and so her acts were not within the scope of her employment with Henschell; and (3) Henschell never ratified Mahan's conduct.
¶ 37 Henschell relies too heavily on the fact that Mahan was not formally employed by them when she solicited Thola's clients. A contractual or formal business employment relationship is not necessary for an agency relationship. See Restatement (Second) of Agency § 220, comment B (1958). An agent is one who is to act on behalf of and subject to the control of another, a principal, when both agent and principal consent to entering into the relationship. Restatement (Second) of Agency § 1 (1958). The evidence of when the Henschell/Mahan employment relationship formally began does not resolve the *533 question of whether Mahan was acting as Herschell's agent when she stole the client list and solicited Thola's clients.
¶ 38 But our review of the record reveals that Thola did not present sufficient evidence to prove that Mahan was acting as Henschell's agent when she stole the customer list. The evidence was sufficient to establish that possibly as early as October 23, 2002, Henschell Chiropractic asked Mahan to conduct direct solicitation for the clinic and promised to pay her $100 for each client who transferred care.[9] But there is no evidence that Henschell controlled her client solicitations, had a right to control Mahan's pre-employment solicitations, or had any knowledge of her wrongful actions until around July 2003, when Thola sent a letter to Henschell informing it of the impending litigation. Thola argues that Henschell had knowledge of Mahan's wrongdoing in December 2002, when Mahan called a Henschell Chiropractic employee and read a farewell letter to her clients to her over the telephone. But the conversation between Henschell's employee and Mahan was innocuous, containing no hint that Mahan violated any law or duty. This evidence is insufficient to support a finding that Henschell is vicariously liable for Mahan's acts before receiving Thola's letter.
¶ 39 Around July 2003, Thola sent Henschell a letter informing it that many of Henschell's clients were unlawfully obtained through Mahan's trade secret misappropriation. Henschell responded by sending Thola a list of its new clients who Mahan had solicited through her mailing to Thola's client list. But Henschell chose to retain those clients and allowed Mahan to keep the client incentive bonus they had paid her. This evidence could support a liability finding on the alternate theory that Henschell ratified Mahan's tortious acts even though they were not committed while Mahan was employed by Henschell or within the scope of Mahan's employment at Henschell. Compare Restatement (Second) of Agency § 82 and § 219 (1958). Henschell argues that we should hold this evidence is insufficient as a matter of law because it is inequitable to require it to refuse clients who the clinic had already treated for several months before it learned that Mahan obtained those clients tortiously. We are not insensitive to this dilemma, but this is an issue for the trier of fact and cannot be decided as a matter of law.
¶ 40 But we note that in calculating damages, the jury did not exclude the costs that Henschell incurred caring for patients who they unjustly retained. This omission may have resulted in an unintentionally high award to Thola, who would have incurred similar cost in providing the same treatment to the same patients during that period. See Taylor v. Balch Land Dev. Corp., 6 Wash. App. 626, 630-31, 495 P.2d 1047 (1972).
Exemplary Damages and Fees
¶ 41 Henschell claims that the trial court erred when it awarded Thola exemplary damages and attorney fees under the UTSA. For the reasons stated above, the amount of damages must be redetermined, but, under the UTSA, the trial court has authority to award exemplary damages and attorney fees.[10]
¶ 42 The UTSA allows a trial court to award exemplary damages (up to twice the amount of damage proved) and attorney fees if "wilful and malicious misappropriation exists." RCW 19.108.030(2), .040. A trial court's decision to award exemplary damages and fees under the UTSA is discretionary and we will not reverse the amount unless the trial court clearly abused its discretion. Boeing Co. v. Sierracin Corp., 108 Wash.2d *534 38, 61-62, 738 P.2d 665 (1987); Rucker I, 88 Wash.App. at 360, 944 P.2d 1093.
¶ 43 Henschell argues that because the jury did not find that Henschell acted willfully or maliciously but instead found only that Mahan acted willfully and maliciously, that the trial court could only award exemplary damages against Mahan. We disagree. The statute uses the passive voice"[i]f wilful and malicious misappropriation exists"and suggests that all responsible, directly or vicariously, for the willful and malicious conduct are liable. RCW 19.108.030(2), .040. The jury found that Mahan acted willfully and maliciously when she stole Thola's confidential client list. On retrial, if the jury finds that Henschell ratified Mahan's conduct, the UTSA gives the trial court authority to exercise its discretion and award attorney fees and exemplary damages in an amount double the damages proved to have resulted from Mahan's malicious and willful misappropriation of Thola's trade secrets.
Attorney Fees on Appeal
¶ 44 On appeal, a partially prevailing party is entitled to attorney fees for its successful claims. RCW 19.108.040; Sintra, Inc. v. City of Seattle, 131 Wash.2d 640, 668, 935 P.2d 555 (1997). But Henschell has not requested attorney fees and so we award none. RAP 18.1(b).
¶ 45 We reverse and remand for retrial in accord with this opinion.
We concur: BRIDGEWATER, J, and VAN DEREN, A.C.J.
NOTES
[1] Chapter 19.108 RCW.
[2] Henschell's wife's name is not known. She is listed as "Jane Doe" in all court proceedings.
[3] Mahan filed for bankruptcy protection and is not a party to this appeal.
[4] Henschell also appears to challenge the sufficiency of the evidence and assigns error to the denial of their motion for a directed verdict as well as the trial court's entering judgment based on an erroneous verdict. But they did not pursue this reasoning in their opening brief and stated in their reply brief that the sole insufficiency argument relates to the amount of damages.
[5] In some jurisdictions, a common law claim is not preempted if the elements require some allegation or factual showing beyond those required under the UTSA. Mortgage Specialists, 153 N.H. at 778, 904 A.2d 652. But we do not adopt this view of the UTSA at this time because our court did not adopt this reasoning in Rucker I, addressing only factual preemption, and neither Thola nor Henschell brief this issue. See 88 Wash.App. at 358, 944 P.2d 1093.
[6] Thola does not address this argument, but we discuss standing sua sponte to avoid rendering an advisory opinion. Branson v. Port of Seattle, 152 Wash.2d 862, 875 n. 6, 101 P.3d 67 (2004).
[7] Henschell asserts that their enrichment from Mahan's actions was not "unjust" and that, therefore, insufficient evidence supported the jury's verdict on that claim. But it was the jury's duty to determine whether Henschell was unjustly enriched by the fees paid by unlawfully obtained clients. It found that Henschell was unjustly enriched and we will not substitute our judgment for the jury's verdict on this issue.
[8] Although Henschell did not raise this issue, we note that the trial court's duty of loyalty instruction misstated the law. It read:

An employee has a duty of loyalty to her employer which prohibits the use of confidential information obtained during employment to the detriment of her employer. An employee may not use confidential information of her employer, either written down and removed from her employer, or remembered, to solicit the patients of her former employer.
The duty of loyalty prohibits an employee, before the end of her employment, from soliciting her employer's customers for her new employer.
These duties exist even if there is no non-competition or non-solicitation agreement between the employer and employee.
6 CP at 1033 (emphasis added). The emphasized portion of the instruction describes trade secret misappropriation that is not based in contract or criminal law. The UTSA prohibits litigation for trade secret misappropriation under the common law duty of loyalty and so this instruction misstates the law of duty of loyalty. But, as discussed above, Henschell lacks standing to challenge this instruction because it is not aggrieved by this decision.
[9] The undated written agreement did not place a time frame on when Mahan could start soliciting those clients. And it is not clear that Mahan and Henschell had an agreement for direct solicitation as early as October 23, 2002. The witnesses had trouble remembering when the agreement was finalized and it is possible that in late October, Mahan and Henschell were still negotiating the contract terms, which may not have been finalized until January 2003. But a reasonable jury could find that there was an agreement on this date based on Henschell's testimony.
[10] Henschell alternately argues that insufficient evidence supported the award of damages and restitution. We do not address this issue on the merits because we reverse on the ground of UTSA preemption.