IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SEIU HEALTHCARE NORTHWEST
TRAINING PARTNERSHIP, a
Washington trust,

              Respondent,

v.

EVERGREEN FREEDOM
FOUNDATION, d/b/a FREEDOM
FOUNDATION, a Washington nonprofit
organization,

              Petitioner.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 76220-6-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 1, 2018

BECKER, J. — Evergreen Freedom Foundation appeals from an order of replevin compelling the return of data belonging to respondent, SEIU Healthcare Northwest Training Partnership. We find no error. The trial court correctly determined that the replevin claim is not preempted by the Uniform Trade Secrets Act (UTSA), chapter 19.08 RCW, and is an appropriate remedy under the circumstances.

FACTS

The Partnership is a nonprofit organization that provides training to many Washington home care workers. These include individual providers whose training is funded by the State pursuant to a collective bargaining agreement with

the union for individual providers. The union, SEIU 775, is part of the Service Employees International Union. The State shares information with the Partnership about state-funded individual providers. The Partnership stores this data, along with other information about trainees, in a confidential electronic database.

The Foundation is a nonprofit organization that, among other things, endeavors to inform workers of their constitutional rights regarding financial support of public-sector unions. An opportunity to acquire contact information for individual providers arose in the spring of 2016. A former employee of the Partnership, Matthew Williams, had access to confidential records about thousands of trainees from the Partnership's internal database. He offered to sell this data to the Foundation. The Foundation paid Williams $12,000 for two electronic spreadsheets stored on a flash drive. The Foundation copied and downloaded the spreadsheets and the data they contained, including individual contact information, into its electronic database. The Foundation used the records to notify individual providers that they had the right to opt out of financially supporting SEIU 775.

In August 2016, two flyers from the Foundation were delivered to the Partnership's office addressed to a name that existed in the Partnership's database only in connection with a mock file created as part of a training exercise for a new employee. The Partnership realized that the Foundation must have gained access to its database. The Partnership brought this suit, alleging a violation of the Uniform Trade Secrets Act and a claim for intentional interference

2

with business expectancy. Shortly thereafter, in a different lawsuit between the Foundation and SEIU 775, Maxford Nelsen—the Foundation's CR 30(b)(6) witness—testified that the Foundation had purchased records concerning approximately 42,000 individual providers from a person he referred to as Confidential Source B. Although the Foundation refused to reveal the identity of Confidential Source B, the Partnership later learned through its own efforts that it was Williams.

The Partnership wrote to the Foundation demanding immediate return of all copies of the stolen records and the destruction of information derived from the stolen database. The Foundation did not comply with this demand.

In September 2016, the Partnership amended its complaint to include a cause of action for replevin, seeking return of the spreadsheets.

Replevin is an ancient remedy for an ancient problem that can be phrased as "that's mine, give it back." Replevin has come down to us from medieval times as a summary process, arising "out of the need of a turbulent society to discourage resort to self-help." JOHN G. FLEMING, THE LAW OF TORTS 73 (5th ed. 1977). Washington has had a replevin statute since the first legislative assembly of the Territory of Washington. LAWS OF 1854, §§ 100-110, at 149-52. Replevin is a special statutory proceeding "to determine title to, or right of possession of, personal property." Apgar v. Great Am. Indem. Co., 171 Wash. 494, 498, 18 P.2d 46 (1933). The prima facie elements are "ownership of the property, a right to its possession, a demand on the respondents for its surrender, their refusal to

3

surrender it, and their consequent wrongful detention of same." Page v. Urick, 31 Wash. 601, 603-04, 72 P. 454 (1903).

In an action to recover the possession of personal property, the plaintiff "may claim and obtain the immediate delivery of such property." RCW 7.64.010. As the result of an amendment in 1979, the plaintiff must first apply for an order directing the defendant to appear and show cause why the court should not issue an order putting the plaintiff in possession of the personal property. RCW 7.64.020(1). Final judgment at a show cause hearing is permitted when the defendant raises no factual issues requiring a trial. RCW 7.64.035(3). In this respect, replevin is analogous to unlawful detainer, a summary proceeding designed for the purpose of hastening recovery of possession of real property. MacRae v. Way, 64 Wn.2d 544, 546, 392 P.2d 827 (1964).

The trial court held a show cause hearing and determined the Foundation had raised no issue of material fact and all of the elements of replevin were met. The court entered a written order of replevin on November 15, 2016. The court listed the following as facts that were undisputed at the hearing:

- The Foundation purchased copies of two spreadsheets containing information about the Training Partnership's students from Person B for $12,000;

- The Foundation knew the copies of spreadsheets came from the Training Partnership when it purchased them;

- The Training Partnership maintained the spreadsheets and the information contained therein as confidential;

- The Training Partnership treated the information in the spreadsheets as confidential pursuant to its Confidentiality Policy;

- Downloading information from the Training Partnership's database is not permitted under the Partnership's policies;

- The Training Partnership owns or has lawful possession of all of the information contained in its student database, and the Partnership never authorized the Foundation to own or possess any part of its student database;

- The Washington State Department of Social and Health Services owns some of the information in the Training Partnership's student database and authorizes the Training Partnership to use that information. The department never authorized the Foundation to own or possess its portion of the Training Partnership database;

- The value of the spreadsheets purchased by the Foundation from Person B is at least $12,000, the amount the Foundation paid for them; and

- The Foundation is able to identify and extract the information that was contained in the two spreadsheets from other information contained in its databases.

The court concluded that these facts supported a final judgment entitling the Partnership to possession of all copies of the two spreadsheets and the information contained therein, in addition to all other remedies authorized by the replevin statute. The Foundation was ordered to take various actions to comply with this ruling. The court rejected the Foundation's argument that the replevin claim was preempted by the Uniform Trade Secrets Act.

In December 2016, the Foundation filed a notice seeking discretionary review by this court. Discretionary review was granted under RAP 2.3(b)(4) based on the parties' stipulation.

## ANALYSIS

### 1. The Uniform Trade Secrets Act does not preempt replevin

The Uniform Trade Secrets Act codifies the basic principles of common law trade secret protection. Ed Nowogroski Ins., Inc. v. Rucker, 137 Wn.2d 427, 438, 971 P.2d 936 (1999). It permits injunctive relief and damages for "misappropriation" of "trade secrets." RCW 19.108.020, .030.

The act "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900. The Foundation contends this language preempts the Partnership's replevin claim.

The Partnership responds that the replevin claim cannot be preempted under these or any circumstances because the replevin statute expressly provides that its remedies "are in addition to any other remedy available to the plaintiff." RCW 7.64.010.

Whether the Uniform Trade Secrets Act displaces a replevin action calls for statutory construction. Matters of statutory construction are reviewed de novo. O.S.T. v. Regence BlueShield, 181 Wn.2d 691, 696, 335 P.3d 416 (2014). Our fundamental goal is to discern and implement the legislature's intent. O.S.T., 181 Wn.2d at 696. It is the duty of the court to reconcile apparently conflicting statutes and to give effect to each of them, if this can be achieved without distortion of the language used. State v. Fagalde, 85 Wn.2d 730, 736, 539 P.2d 86 (1975).

The issue under RCW 19.08.900 is whether statutory replevin is a "conflicting" law pertaining to misappropriation of a trade secret. The replevin statute expressly provides that its remedies "*are in addition to any other remedy available to the plaintiff.*" RCW 7.64.010 (emphasis added). This language was added to the Washington replevin statute in 1990, nine years after Washington's enactment of the Uniform Trade Secrets Act in 1981. It evinces legislative intent that statutory replevin is always available to a qualifying plaintiff. It follows that a plaintiff who has alleged (or could allege) misappropriation of a trade secret does not thereby lose the right to seek replevin of property owned by the petitioner and wrongfully detained by the alleged misappropriator.

The Foundation is able to construct an argument for the supremacy of the Uniform Trade Secrets Act only by ignoring the strong antipreemptive language in the replevin statute—"in addition to any other remedy available." The Foundation does not address this provision. According to the Foundation, the displacement of other law that occurs by means of RCW 19.108.900 obliterates the court's duty to try to reconcile or harmonize statutes that might appear to conflict with the Uniform Trade Secrets Act. Reply Brief of Petitioner at 7-9. In the analysis recommended by the Foundation, the text of a preempted statute is irrelevant and statutory construction is unnecessary. Reply Brief of Petitioner at 9.

The Foundation contends that when another claim is brought in the same lawsuit with a claim of trade secret misappropriation, the question the court must ask is whether both claims are based on the same underlying facts. The

Foundation supports this position by citation to a number of federal district court decisions. When such decisions apply Washington law, they typically take as their starting point the "factual preemption" test adopted in <u>Thola v. Henschell</u>, 140 Wn. App. 70, 82 & n.5, 164 P.3d 524 (2007). <u>See, e.g.</u>, <u>T-Mobile USA, Inc. v. Huawei Device USA, Inc.</u>, 115 F. Supp. 3d 1184, 1198 (W.D. Wash. 2015).

The plaintiff in <u>Thola</u> was a chiropractor. Her former employee, Mahan, went to work for Henschell, another chiropractor. Henschell paid Mahan a bonus of $100 for every new client she added to the patient rolls. Mahan appropriated Thola's confidential client list and used it to persuade many of Thola's clients to transfer to Henschell. Thola sued Henschell and Mahan, alleging misappropriation of trade secrets under the Uniform Trade Secrets Act as well as three common law claims: breach of the duty of loyalty, tortious interference with a business relationship, and unjust enrichment by the tortious conduct. <u>Thola</u>, 140 Wn. App. at 76. When the case went to trial, defendants argued that the trade secrets claim preempted the three common law claims and moved for a directed verdict on those claims. The motion was denied. A jury awarded $89,000 in damages against Mahan and Henschell and found that Henschell had been unjustly enriched by $28,712.

Preemption was argued on appeal. The court did not dismiss any of the common law claims as preempted. The court preserved Thola's cause of action for unjust enrichment, noting that the act expressly allows for recovery of "unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." RCW 19.108.030(1), quoted in <u>Thola</u>, 140

8

Wn. App. at 84. The court also preserved the tortious interference claim because it was supported by evidence of Mahan's in-person solicitation of clients, which evidence was distinct from the misappropriated client list that supported the claim of trade secret misappropriation. Thola, 140 Wn. App. at 82-83. The court did not reach Henschell's argument that the act preempted Thola's claim for breach of the duty of loyalty because that claim pertained only to Mahan, who had filed for bankruptcy and was not a party to the appeal. Thola, 140 Wn. App. at 83-84 and 77 n.3.

Although the court did not dismiss any of the common law claims as preempted, the court reversed the jury's award in its entirety and remanded for a new trial. The error that required reversal was the court's failure to instruct the jury that it could not consider acts of trade secret misappropriation as proof of other claims. Most of the evidence related to the theft of the confidential customer list, and it was likely the jury used that evidence to find in Thola's favor on all claims. The trial court "should have instructed the jury that it could not consider evidence of Mahan's acts of trade secret misappropriation when it deliberated on Thola's common law claims." Thola, 140 Wn. App. at 85. "Because the damages award was not segregated, we cannot strike those portions related to the preempted causes of action." Thola, 140 Wn. App. at 77.

In coming to this result, the court set forth an analytical framework that "precludes duplicate recovery for a single wrong." Thola, 140 Wn. App. at 82. The three-step analysis was offered as a "helpful guide" to determining whether the Uniform Trade Secrets Act preempts a civil claim: "(1) assess the facts that

9

support the plaintiff's civil claim, (2) ask whether those facts are the same as those that support the plaintiff's UTSA claim, and (3) hold that the UTSA preempts liability on the civil claim unless the common law claim is factually independent from the UTSA claim." Thola, 140 Wn. App. at 82, citing Mortg. Specialists, Inc. v. Davey, 153 N.H. 764, 778-79, 904 A.2d 652 (2006). The court referred to its analysis as "factual preemption," distinguishing it from an elements-based analysis discussed in Mortgage Specialists, Inc. Thola, 140 Wn. App. at 82 n.4. The elements analysis holds that "a common law claim is not preempted if the elements require some allegation or factual showing beyond those required under the UTSA." Thola, 140 Wn. App. at 82 n.4, citing Mortg. Specialists, Inc., 153 N.H. at 778. The Thola court decided not to adopt an elements test "at this time" because the issue had not been briefed by the parties and had not been adopted in the court's earlier opinion on preemption, Ed Nowogroski Insurance, Inc. v. Rucker, 88 Wn. App. 350, 358, 944 P.2d 1093 (1997) ("Nowogroski may not rely on acts that constitute trade secret misappropriation to support other causes of action"), aff'd, 137 Wn.2d 427. Thola, 140 Wn. App. at 82 n.4.

Thola has been described as taking a "strong" view of the preemptive scope of the Uniform Trade Secrets Act in Washington, in contrast to the "weaker" elements analysis. T-Mobile, 115 F. Supp. 3d at 1198. The distinction mattered in T-Mobile because on a motion to dismiss for failure to state a claim, the plaintiff's tortious interference claim would survive under the weak view but not under the strong view. T-Mobile, 115 F. Supp. 3d at 1198-99. The court

10

decided to apply "the stronger form of preemption that the Thola court embraced," predicting that the Washington Supreme Court would also embrace that view if called on to make a choice. T-Mobile, 115 F. Supp. 3d at 1199. "As the court has already explained, there are no allegations in T-Mobile's complaint that indicate that it can prove tortious interference without relying on the same facts that support its trade secret claim." T-Mobile, 115 F. Supp. 3d at 1199.

Here, the Foundation argued to the trial court that the Partnership's cause of action in replevin relied on the same facts as its trade secret claim and therefore should be dismissed under Thola. The trial court, while aware of Thola, ruled that replevin was not preempted:

> The Court of Appeals held [in Thola] that the UTSA did not preempt the tort claims because they were based on actions that were not the acquisition or use of trade secrets. There is no conflict between Chapter 7.64 RCW and Chapter 19.108 RCW. Under Chapter 7.64 RCW, *it does not matter whether the data is confidential or a trade secret. Instead, what matters is whether Training Partnership or EFF has a superior possessory interest in the data.*

Conclusion of Law 3, Clerk's Papers at 747 (emphasis added).

The Foundation contends the trial court's ruling exemplifies the "weaker" elements-based reasoning disfavored by the courts that have followed Thola. The Foundation's position is that when plaintiffs allege theft or misuse of confidential, commercially valuable information, they are confined to a single cause of action for misappropriation of trade secrets. Brief of Petitioner at 18-19; Reply Brief of Petitioner at 7-8. Thola does not support this position. Thola did not order dismissal of the common law causes of action. Instead, the court ordered a remand so that to the extent their factual bases overlapped with the

trade secrets claim, proper instructions could be given to ensure that the jury did not give the plaintiff a duplicate recovery for a single wrong.

The leading case in Washington on the preemptive scope of the Uniform Trade Secrets Act is not Thola; it is our Supreme Court's decision in Boeing Co. v. Sierracin Corp., 108 Wn.2d 38, 48, 738 P.2d 665 (1987). Thola does not cite Boeing on the issue of preemption, even though the issue arose in both cases in a similar posture. The dispute in Boeing was between the airplane company and a former supplier, Sierracin, arising from Sierracin's use of a Boeing window design. Boeing claimed breach of a confidential relationship, breach of contract, and misappropriation of trade secrets under the act. The jury found for Boeing on all three claims and awarded unsegregated damages of more than $1.6 million. Boeing, 108 Wn.2d at 40, 43, 47-48. On appeal, Sierracin argued that the trial court erred by refusing to consolidate the claims into one claim under the Uniform Trade Secrets Act. Boeing, 108 Wn.2d at 48.

The Supreme Court ruled that the trial court did not err in refusing to consolidate Boeing's claims. Boeing, 108 Wn.2d at 48. Because the act expressly provides that it does not affect contractual liability, the court determined that the contract claim was not preempted. RCW 19.108.900(2)(a). As to the claim for breach of a confidential relationship, the court reasoned that "proof of trade secrets is not required for breach of confidentiality claims, which may be brought independently of trade secrets claims." Boeing, 108 Wn.2d at 48. The court affirmed the verdicts on all three claims, finding they were supported by substantial evidence. Boeing, 108 Wn.2d at 46.

12

In Boeing, the court did not assess the facts underlying the claim of breach of a confidential relationship to see if they were the same as the facts supporting the claim for misappropriation of trade secrets. The court's reasoning—that a claim for breach of a confidential relationship is not preempted because it "may be brought independently of" a trade secrets claim—resembles an elements-based analysis more than the "factual preemption" test adopted in Thola.

In Boeing, the court did not consider the issue in Thola: whether the unsegregated award of damages gave the plaintiff a duplicate recovery for a single wrong. This may explain why the Supreme Court did not try to determine whether the breach of confidentiality claim was supported by the same facts as the trade secrets claim, and it may explain why Thola did not cite Boeing. Nevertheless, "Until or unless the Washington Supreme Court overrules Boeing and adopts the Thola analysis, Boeing controls." Modumetal, Inc. v. Xtalic Corp., No. 76708-9-I, slip op. at 21 (Wash. Ct. App. June 25, 2018), http://www.courts.wa.gov/opinions/pdf/767089orderandopinion.pdf. The Foundation's refusal to examine the elements of replevin is inconsistent with Boeing. Boeing indicates the Uniform Trade Secrets Act is preemptive only if an examination of the allegedly preempted cause of action shows that it is founded on a law "regarding civil liability for misappropriation." Boeing, 108 Wn.2d at 48.

The Foundation's preemption argument presented an apparent conflict between the Uniform Trade Secrets Act and the replevin statute. The trial court correctly perceived its duty to examine and, if possible, reconcile the apparently

13

conflicting statutes. We affirm the trial court's conclusion that relief under the replevin statute "is not based upon misappropriation of a trade secret," RCW 19.108.900(2)(a), and therefore is not displaced by RCW 19.108.900(1). The two statutes do not conflict. Both statutes can be given effect without distortion of the language used in either. See Fagalde, 85 Wn.2d at 736.

We are not convinced that the outcome would be different under Thola's three-step analysis. In support of its claim for relief under the Uniform Trade Secrets Act, the Partnership did allege facts supporting its claim that the confidential database of student educational records is a trade secret, the misappropriation of which caused damage. But to the extent that the Partnership alleged these same facts in support of replevin, they were not material to the replevin claim; they were simply part of the narrative. As the trial court stated, "Data can belong to one party and not be a trade secret. And the issue in a replevin case is who has the right to possess the data, not whether the data has any competitive value or economic value to a competitor." To have the right to replevin, the Partnership did not have to prove that the property was confidential data that might be characterized as a trade secret. What mattered was which entity, the Partnership or the Foundation, had the superior possessory interest in the property. The causes of action arising from the two statutes at issue operate independently of each other. There is no danger of a duplicate recovery for a single wrong, the problem Thola dealt with.

The Foundation cites two cases in which a federal district court ruled that a replevin claim was preempted by the Uniform Trade Secrets Act. In one case,

14

replevin was among several causes of action dismissed on summary judgment. The court reasoned that although each cause of action had different elements, "the allegations necessary to prove each element still relate to the same core set of facts." Enters. Int'l, Inc. v. Int'l Knife & Saw, Inc., No. C12-5638 BHS, 2013 WL 6185241, at *10 (W.D. Wash. Nov. 26, 2013) (court order). In the other case, a replevin claim was the subject of a motion to dismiss for failure to state a claim. The court granted the motion, finding the replevin claim was preempted "because it is based entirely on the misappropriation of [the plaintiff's] trade secrets and seeks only the return of the misappropriated information," a remedy contemplated by the Uniform Trade Secrets Act. Christopher Glass & Alum., Inc. v. O'Keefe, No. 1:16-cv-11532, 2017 WL 2834536, at *4 (N.D. Ill. June 30, 2017) (memorandum opinion and order).

Enterprises International, Inc. disposed of the replevin claim without mentioning that the remedies of Washington's replevin statute "are in addition to any other remedy available to the plaintiff." RCW 7.64.010. Christopher Glass likewise does not engage with the law of replevin. Because the interpretation of the two statutes and the resolution of their apparent conflict are issues of state law, Enterprises International and Christopher Glass, have neither authoritative nor precedential force. Hecny Transp., Inc. v. Chu, 430 F.3d 402, 404 (7th Cir. 2005). Their cursory treatment of replevin is not persuasive. State courts should be reluctant to part with a remedy long deemed essential to maintaining civil order.

15

The Seventh Circuit's opinion in Hecny Transportation, Inc. has more to offer. The district court decision under review held that the plaintiff's non-trade-secrets claims were "knocked out" by his allegation that the defendant misused customer information. Hecny Transp., Inc., 430 F.3d at 404. Reversing, the appellate court held that "an assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record." Hecny Transp., Inc., 430 F.3d at 405. The court stated:

> The Uniform Law Commissioners' comment to the model act supports this approach, stating: "The [provision] does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." We would be shocked if the Supreme Court of Illinois were to disagree; nothing in its jurisprudence suggests that it would. This is not a close question.

Hecny Transp., Inc., 430 F.3d at 405. The court found it "unimaginable that someone who steals property . . . would get a free pass just because none of what he filched is a trade secret." Hecny Transp., Inc., 430 F.3d at 404.

The same is true here. The Foundation has argued both that the Partnership's only remedy is under the Uniform Trade Secrets Act and that the stolen data is not a trade secret.[1] If the wrongly detained data is not a trade secret, the consequence according to the Foundation is that the Partnership will be left without a remedy. The possibility of that result is contrary to the manifest

---

[1] See, e.g., Clerk's Papers at 642 n.1 (Defendant's Brief on Show Cause Hearing): "The copies of the lists plainly do not meet the high standard required for trade secret protection."

16

intention of the legislature that replevin remedies "are in addition to any other remedy available to the plaintiff." RCW 7.64.010.

We conclude the trial court properly ruled that the replevin claim was not preempted.

## 2. The replevin statute applies to electronic data

The Foundation contends that the replevin statute does not apply to electronic data. The Foundation argues that replevin "has always been about the recovery of tangible property a plaintiff no longer possesses. A plaintiff's possession must be interrupted to give rise to a replevin claim." Brief of Petitioner at 26. We disagree. The replevin statute does not distinguish between tangible and intangible property. The question is whether the property may be taken back from the defendant and returned to the plaintiff. RCW 7.64.045, .047. Electronic data can be both taken and returned. In fact, this has already occurred in the present case. The electronic spreadsheets were removed from the Foundation's database pursuant to the replevin order. As noted by the trial court, a persuasive decision is Chefs Diet Acquisition Corp. v. Lean Chefs, LLC, No. 14-CV-8467 (JMF), 2016 WL 5416498 (S.D.N.Y. Sept. 28, 2016) (opinion and order), in which the plaintiff was permitted to use replevin to compel the return of an electronically stored customer list.

The Foundation proposes that information stored electronically cannot be replevied unless the entity alleged to have the superior right of ownership has lost access to the information. The Foundation argues the court had no basis to compel the return of the copies because the Partnership retained the same

17

information in its own database. The replevin statute does not support this interpretation. The Partnership has a superior possessory interest in the information. That interest is a property interest. It includes the right to control whether others can have access to the information. If the Foundation had acquired and wrongfully detained copies of tangible documents belonging to the Partnership, the Foundation would have to give them back regardless of whether the Partnership maintained possession of the originals. The same is true with respect to electronic data. The trial court did not err in applying the replevin statute to the electronic spreadsheets.

3. It was wrongful for the Foundation to retain the data

In support of a motion for a show cause hearing under the replevin statute, the plaintiff must file an affidavit showing, among other things, that the property is "wrongfully detained" by the defendant. RCW 7.64.020(2)(b). The Foundation contends the Partnership did not and could not show the Foundation's detention of the spreadsheets was wrongful because the Partnership always had access to its own copies of the information contained in the spreadsheets. As discussed above, for purposes of replevin, it does not matter that the Partnership kept its own copies of the stolen data. The Partnership's superior possessory interest in the information included the right to control access by others to the information. The Foundation wrongfully detained the spreadsheets when it was asked to give them back and did not do so.

The Foundation also argues that the spreadsheets were not "wrongfully detained" because when Williams transferred them to the Foundation, he did not

divulge that he had acquired them from the Partnership's database and he gave assurances that it was lawful for him to possess and transfer the information. To the extent this argument is based on Williams' deposition testimony, it will not be considered because that evidence was not before the trial court. Further, the argument is contradicted by findings the Foundation does not argue are erroneous. The trial court specifically found that the Partnership owns or has lawful possession of all of the information contained in its student database, the Department of Social and Health Services owns some of the information in the database and authorizes the Partnership to use it, and neither the Partnership nor the department ever authorized the Foundation to own or possess any portion of the database.

The elemental question in this action for replevin is the relative right of possession as between the Foundation and the Partnership. It is immaterial that Williams may have told the Foundation he had a legal right to possess and share the spreadsheets. The Foundation has not shown any basis on which it was entitled to possess or retain the spreadsheets when asked by the Partnership to give them back.

We conclude the record supports the element of wrongful detention.

## 4. A bond was not required

The Foundation contends that the trial court erred by not requiring the Partnership to post bond upon being awarded possession. Bond is required only when temporary possession is granted "pending final disposition."

19

RCW 7.64.035(1)(a)(i). No bond was necessary here because the trial court entered final judgment at the show cause hearing.

5. Motions

First, we address the Foundation's motion to supplement the appellate record with a transcript of Williams' deposition and related exhibits.

The Partnership discovered Williams' identity in January 2017. His deposition was taken in March 2017, but the deposition was not considered by the trial court and is not in the trial court record.

The motion is denied. The criteria of RAP 9.11 are not satisfied. The deposition adds nothing material to what is already in the record, and equitable considerations do not support the motion. The reason Williams' testimony was not available before the order of replevin was entered is that the Foundation chose not to reveal his identity.

Second, we address the Partnership's motion to strike a letter sent to this court by the Foundation.

The Foundation asserts that the majority of jurisdictions that have interpreted the Uniform Trade Secrets Act favor the fact-based or "strong" approach to preemption. During oral argument before this court on July 25, 2018, we asked the Foundation for authority supporting this assertion. The Foundation responded the next day with a letter citing eight cases. The Foundation's letter continues with briefing responding to points raised by the Partnership during oral argument. The letter states that questioning by the panel

prevented counsel for the Foundation from using her four minutes of reserved time to rebut the arguments of the Partnership.

The Foundation's case citations are accepted as a proper response to the panel's specific request for authority. We strike the remainder of the Foundation's letter as a brief not authorized by RAP 10.1. The use of time given for oral argument is at the discretion of the court. The opportunity to reserve time for rebuttal is not a guarantee that the panel will refrain from questioning counsel during that time.

6. Attorney fees on appeal are awarded to the Partnership

The trial court awarded fees to the Partnership as authorized by the replevin statute when final judgment is entered at a show cause hearing:

> (3) If at the time of the hearing more than twenty days have elapsed since service of the summons and complaint and the defendant does not raise an issue of fact prior to or at the hearing that requires a trial on the issue of possession or damages, the judge or court commissioner may also, in addition to entering an order awarding possession, enter a final judgment awarding plaintiff possession of the property or its value if possession cannot be obtained, damages, court costs, reasonable attorneys' fees, and costs of recovery.

RCW 7.64.035(3). When a trial court awards attorney fees pursuant to a statute, it is ordinarily the rule that attorney fees are awardable on appeal as well. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 825, 828 P.2d 549 (1992). This court once denied a request for attorney fees on appeal in a replevin action, reasoning that RCW 7.64.035 "applies only to rulings of a 'judge or court commissioner, at the hearing on the order to show cause' in a replevin action." Puget Sound Nat'l Bank v. Honeywell, Inc., 40 Wn. App. 313, 319, 698 P.2d 584 (1985). Because Cowiche Canyon is the stronger precedent, we follow

21

No. 76220-6-I/22

it. We award attorney fees on appeal to the Partnership, subject to compliance with RAP 18.1.

Affirmed.

_Becker, J._

WE CONCUR:

_Leach, J._     _Schuveller, J._

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2018 OCT -1  AM 10: 43

22